HENRY S. ROBINSON AND JAMES BURTENSHAW v. KOR-
NELIUS MULDER.

*Jury—Challenge to the array—Sale and shipment of goods—Evi-
dence.*

1. An objection not made in a challenge to the array cannot be raised in the appellate court.

2. On sustaining a challenge to the array, based upon irregularities in the drawing of the entire jury, it is proper for the court to discharge *all* of the jurors thus drawn for the term, and the challenging party is estopped from claiming that the court erred in so doing.

3. A shipping clerk testified that he shipped certain cases of boots and shoes to a given address. He was handed statements, which he testified he saw copied from the vendors' order-books. The statements were not admitted in evidence, but were used by the witness to refresh his recollection. It was his duty to make the lists for shipment from the order-books, which lists he handed to the packer, and, after the goods were packed, he went over the order-books, and saw that the packer had checked the goods upon the lists as being packed. He could not swear from his own knowledge what the cases contained, but took it for granted that the packer had properly performed his duties. The packer was not sworn; and it is held that the failure to produce him as a witness did not render the testimony of the shipping clerk incompetent, but that it was admissible for what it was worth, as tending to show the sale and shipment of the goods ordered.

4. Entries copied upon freight-books from the way-bills by a railroad agent, purporting to show the receipt by the company of

cases of goods, which the agent swears he delivered to the consignee's authorized draymen, are competent evidence in a suit against the consignee for the price of the goods.

5. A witness may refresh his memory from copies of invoices of goods claimed to have been shipped to him, or from a bill of particulars of the goods filed in the case, and if he can remember receiving the goods, independently of the papers, he may so testify.

Error to Newaygo. (Palmer, J.) Argued May 8, 1890. Decided May 16, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion, and in 74 Mich. 374.

*William D. Fuller,* for appellant.

*Edgar L. Gray,* for plaintiffs, contended for the doctrine stated in the opinion.

MORSE, J. This was an action brought in *assumpsit* in the Newaygo circuit court for a balance due on merchandise alleged to have been sold and delivered by the plaintiffs to the defendant. The claim of plaintiffs shows that the assumed liability of defendant rests upon a similar state of facts as in Cooper v. Mulder, 74 Mich. 374. The plaintiffs had verdict and judgment.

The first error assigned is that the court erred in not sustaining a challenge to the array of jurors. It seems that, at the same term of court, the case of *Cooper v. Mulder* came on for a new trial under the order of this Court. The defendant in that case is the defendant in the case at bar. He challenged the array, and the challenge was held good. The jurors impaneled in the case were discharged, as were also all the jurors summoned for that term, as the objections to the panel went also to the whole body of jurors drawn and summoned for that term. The court then made an order, " to meet the exigencies of the term, and for the purpose of obtaining a jury near

the county seat," that 24 qualified jurymen be drawn from 12 townships of the county, naming such townships. These jurors were drawn and summoned forthwith. When the case in hand came on for trial a panel was selected from this list of jurors.

The chief argument here against the validity of this panel is that it was not selected from the body of the county, but limited to 12 townships, when there are 22 townships in the county; and consequently the defendant was not permitted the right that the statute gives him to a jury drawn from all the townships of the county. We are not disposed to inquire into the power of the circuit judge to make this order, as the question was not raised upon the challenge to the array, and it must be considered that the defendant thereby waived the irregularity, if there was any. The defendant's challenge to the array, which was in writing and verified, set forth the challenge to the array in the case of *Cooper v. Mulder*, the action of the court thereon, the order made by the circuit judge in relation to the drawing of a new jury, and raised only this objection, to wit, that the court had no power to order an entire new jury, because petit jurors had been drawn and summoned and appeared in the first place, and that, while such drawing was irregular, it was only avoidable on objection of some interested party.

As before said, the objections to the panel in *Cooper v. Mulder* went to the whole jury, as all were drawn and summoned in the same manner. If the court was authorized, on account of the irregularities set forth in the challenge to the array in the case of *Cooper v. Mulder*, to discharge that panel, it was eminently proper that he should discharge all the jurors, as the objections went to all of them. Whether he did right or not in thus discharging them cannot be considered on the application or

complaint of this defendant. He would be estopped from
claiming in this case that the court did wrong in grant-
ing his motion in the case of *Cooper v. Mulder.* See
*People v. White,* 68 Mich. 648, 654. Nor can he in this
Court raise an objection not made in his challenge to the
array in this case.

Various objections are made to the admission of proof
in support of plaintiffs' claim, but there is no merit in
any of them. It is also urged that there was not suffi-
cient testimony to go to the jury to establish plaintiffs'
case as to the sale and delivery of the goods. We think,
in the absence of any testimony on the part of the defend-
ant to contradict or explain the evidence produced on the
part of the plaintiffs, that a satisfactory showing was
made from which the jury were legally authorized to find
a sale and delivery of the goods to M. B. Franklin. There
was no dispute as to what had been paid upon the account.
It is stipulated in the record that—

"Plaintiffs introduced testimony tending to show that
one M. B. Franklin was engaged in business at Fremont,
Mich., from the fall of 1883 until some time in February,
1888, as a retail dealer in dry goods, groceries, clothing,
and boots and shoes; that defendant assisted him in start-
ing in business, and from time to time afterwards, and
finally, in December, 1885, gave him verbal authority to
purchase goods for his store in defendant's name and on
his credit, which authority was never revoked, and under
which Franklin acted until some time in February, 1888;
that the cases or packages containing such goods were
marked and shipped to defendant at Fremont, Mich., and
delivered by the railroad company to Mulder's draymen,
who had authority in writing to receive and receipt for
all goods received at the railroad station at Fremont
marked or consigned to said defendant, and who delivered
the goods at Franklin's store; that defendant had knowl-
edge during this time of the fact that Franklin was buy-
ing and receiving said goods in this way, but that the
parties selling the goods to Franklin did not deal person-
ally with defendant.

"And, the jury having found in favor of the plaintiffs upon this branch of the case, and passed upon the question of defendant's general liability under the testimony, as an issue in the case, that question is not involved in this bill of exceptions, and a more detailed statement of the testimony relating thereto is for that reason omitted."

The plaintiffs' bill of particulars included bills of goods sold and delivered to K. Mulder from July 12, 1887, to February 1, 1888, amounting to $565.96. The amount, less payment, was $464.96, with interest. The plaintiffs proved by William Boughton, a traveling salesman, that he sold some six or seven hundred dollars worth of boots and shoes to defendant by verbal orders from Franklin. These orders he put in writing, and sent to plaintiffs, who are wholesale dealers in boots and shoes at Detroit. He knew some of them were filled by seeing the goods in Franklin's store. Being shown the bill of particulars, he stated that he recollected of selling all the identical goods therein mentioned, except one item. It is insisted that the written orders or copies of the verbal orders that he forwarded to plaintiffs would have been the best evidence. However this may be, they were but *memoranda* made by himself, and, if he could remember the articles he sold by looking at the bill of particulars, the oral testimony was competent. He also swears that in March, 1888, he saw in defendant's store, the one occupied by Franklin, while he was doing business, a good many boots and shoes sold by him, and shipped by plaintiffs. He identified them by the stock number on the boxes, which corresponded with the numbers kept in the stock-books in plaintiffs' store.

The plaintiffs' shipping clerk testified that he shipped certain cases of goods, boots and shoes, to K. Mulder, Fremont, Mich., delivering them to a railroad carrier, marked as above. He gave the number of cases and date of shipment. He was handed statements, which he testi-

fied he saw copied from plaintiffs' order-books. These statements contained lists of the goods shipped. The statements were not admitted in evidence, but used for the purpose of refreshing the recollection of the witness. It was his duty to make the lists for shipment from the order-book, which lists he handed to the packer. After the goods were packed, he would go over the books, and see that the packer had checked the goods upon the lists as being packed. He could not swear from his own knowledge what the cases contained, but took it for granted that the packer had properly performed his duties. The packer was not sworn. It is contended that the packer should have been brought as a witness. The failure to produce the packer, however, did not render the testimony of this witness incompetent. It was admissible for what it was worth.

The freight agent at Fremont testified that he received from Detroit and delivered to draymen upon the receipts of K. Mulder, signed by draymen (who it was shown had authority from Mulder in writing to receipt for him), 23 cases of boots and shoes, 9 of which were marked as consigned from Robinson or Robinson & Burtenshaw; the others were not marked upon the freight-book, except as coming from Detroit. He testified that the entries on the freight-book were copied from the way-bills. It is contended that the way-bills should have been introduced instead of the entries on the book. We think the entries were competent. The cases delivered to Mulder's draymen were received at dates corresponding with dates of shipment of cases from Detroit, as far as they went, except that a few less cases were shown to have been received by the agent's testimony, than were shipped as testified by the shipping clerk.

Franklin testified that he purchased goods of plaintiffs in defendant's name. He was shown the account of the

goods sued for, and asked if he purchased them from plaintiffs, and answered that he was satisfied he did.

"*The Court.* The question is whether or not you purchased those goods from the plaintiffs in this suit.

"*A.* Well, I am satisfied,—those very goods; of course I couldn't swear right up and down to that. It is a long time, and I have not had the books, and 'tis impossible for me to state.

"*Q.* Give about the amount, as you recollect,—the best impression.

"*A.* There is the trouble; I don't recollect, Mr. Gray."

The witness testified that the invoices of goods bought in defendant's name came in his name, by mail, to Fremont, and were usually brought to Franklin's store by defendant, or his wife, or her step-son.

"*Q.* The goods that came to your store,—I believe you testified to that; that you bought goods in Mr. Mulder's name from the plaintiffs in this suit,—how were they marked? Were the boxes marked containing them?

"*A.* They were marked, 'Mulder, Fremont, Michigan,' and came from Detroit. The invoices were not directed to me."

Franklin testified, further, that he remembered ordering goods of plaintiffs in the name of defendant, but could not remember how many, and that he received goods from them, but could not recollect the amount. The statement or list of the goods was shown him. Looking it over, he picked out $102 worth, which he remembered he had; and also testified that he received a good many of the goods mentioned in the bill of particulars. Objection is made to this testimony because, the statements shown him were not the original invoices of the goods, but copies. This objection is not good. The statements were not put in evidence. It was competent and perfectly proper to show him a list of the goods in suit made by any one, and if, upon looking at the list, he could remember receiving any of the goods, it was proper

81 MICH.—6.

for him to so state to the jury, and was competent evidence. It was also proper to show him the bill of particulars, and let him read it, and then to ask him if he could remember having had any of the goods, and, if so, to state what goods; and if, by so looking at the bill, his memory was refreshed, and he remembered receiving the goods, independently of the bill, he could so testify.

Error is assigned because this witness was shown two invoices of goods, and stated that he ordered such goods of plaintiffs, and received one invoice amounting to $130. It appeared that these two invoices were of goods purchased in September and October, 1886, and were not mentioned in the amended bill of particulars. When the plaintiffs filed their declaration they attached a bill of particulars of their demand to it, commencing September 4, 1886, and closing in February, 1888. This bill of particulars contained only the dates and amounts of goods, without describing them, except as " merchandise." On demand, the bill was amended, showing a list of the particular goods sold each day. This new bill did not commence until July 12, 1887, and left out the sales in September and October, 1886, and also omitted the credits. The bill attached to the declaration contained the whole account of goods sold to Franklin in Mulder's name, and also a credit of all the moneys paid upon such account. The claim was for the same net amount in both bills. It was competent to show that he ordered these goods, and that he remembered that he received one invoice of them. It had a tendency to show the correctness of the whole account. It is suggested by defendant's counsel that Franklin was the witness, above all others, who ought to have known what goods he received. But he was the son-in-law of the defendant, and, it is plain from the record, an unwilling witness for the plaintiffs. He was testifying in June, 1889, without the aid of any

books of his own, and nearly a year after he had failed in his business. He was, however, "satisfied that he had the goods" as claimed by plaintiffs, and his testimony alone carries conviction to our minds that he did receive them all. But hampered by constant objections, and put to the test of his memory alone, unaided by any *memoranda* of his own, and not desirous of hurting his father-in-law any more than he could help and tell the truth, it is not surprising that he failed to carry in his head the name, number, and description of the goods he bought of plaintiffs.

An examination of this record shows a hot fight from the beginning, with every possible objection interposed by the defendant, and the trial court was not as liberal as he should have been in admitting testimony as to the sale and delivery of these goods. John W. Rutherford, a clerk of Franklin's, was shown statements or lists of the goods, and asked if he had knowledge of the identical goods mentioned therein being received by Franklin. He answered:

"No, sir; I can't say identical. I can answer the question by saying I see items on these bills that correspond in description and price to the goods received during that time.

"*Mr. Fuller*, of counsel for defendant. *Q.* That is all you know about it?

"*A.* Yes, sir."

A motion was then made to strike this testimony out as incompetent and immaterial, which was properly denied. He also checked off upon the lists goods corresponding in dates and price that he remembered checking off upon invoices while in Franklin's employ, amounting to about $174. He also testified that while he was there invoices were received corresponding with some of the items in suit; that a large number of cases of boots and shoes were received, but he could not remember how

many, and that they had in the store all the kinds and descriptions of boots and shoes mentioned in the bill of particulars.

Richard D. Elliott, book-keeper for plaintiffs, testified, on direct examination, that the goods mentioned in the bill of particulars were sold and delivered aboard of the railway cars, and sent to the defendant directed to Fremont Center, Newaygo county, and that, according to a statement rendered February 24, 1888, the balance due upon them was $470.95; that he mailed the statement on that day to defendant in one of plaintiffs' printed envelopes, which would have been, if not received, returned in 10 days. On cross-examination he testified that he had no personal knowledge of the shipping of any of the goods; all that he knew about it was from the entry or charging of the accounts upon the plaintiffs' books to Mulder; that he sent statements whenever an account became due. The defendant offered no testimony upon this branch of the case, and no evidence in his behalf is shown in the record. Upon the testimony, substantially as given above, the jury found a verdict for the amount claimed to be due, with interest.

The judgment entered on such verdict is affirmed, with costs.

The other Justices concurred.