CELIA NILES, ADMINISTRATRIX, ETC., V. JOSEPH H. STEERE, CIRCUIT JUDGE OF SCHOOLCRAFT COUNTY.

*Constitutional law—Amendment of act—Title—Jury—Challenge to the array.*

1. It was provided by Act No. 142, Laws of 1883, that certain county officers of each county in the Upper Peninsula should constitute a board to select a list of names of persons to serve as petit jurors in the circuit courts of said counties. The counties embraced in the eleventh judicial circuit (which included the county of Manitou) were excepted from the operation of said act. The act of 1883 was amended by Act No. 93, Laws of 1885, entitled " An act to amend section 1 of Act No. 142 of the Session Laws of 1883, being an act entitled ' An act to provide for selecting petit jurors in the Upper Peninsula,' so as to include the county of Manitou," by providing that said county officers " of each county in the Upper Peninsula, and of the county of Manitou," should constitute a board for the purpose of selecting such jury lists, thus eliminating the exception as to the counties embraced in the eleventh judicial circuit. And it is held that, had the clause " so as to include the county of Manitou " been omitted from the title to the act of 1885, there would be much force in the claim that the act is valid so far as it applies to that portion of the eleventh judicial circuit within the bounds of the Upper Peninsula proper, the title of the act of 1883 being broad enough to cover that portion of the State; that Manitou county is not a part of the Upper Peninsula, within the meaning of the act; that, by inserting the clause mentioned, an attempt was made to include territory not in the Upper Peninsula, and the plain inference is that this was the only object of the act; that said clause restricted the title, and precluded legislation embracing any other territory than the county of Manitou.

2. The list of names from which a petit jury was drawn was selected from the assessment rolls of 1892, instead of 1893, as required by the statute, and a challenge to the array was interposed on that ground. It appeared that a majority of the names selected were names of persons admittedly eligible. And it is held that that was sufficient; that if the others were not, and happened to be drawn, the result was that a suffi-

cient number of qualified jurors did not attend upon the court, and How. Stat. §§ 7575, 7576, 7578, and 7580, point out the procedure in cases where from any cause this happens.

*Mandamus.* Submitted October 2, 1894. Denied October 16, 1894.

Relator applied for *mandamus* to compel respondent to vacate an order sustaining a challenge to the jury array interposed in a cause pending before him. The facts are stated in the opinion.

*J. F. Carey,* for relator.

*McMahon & Oren,* for respondent.

HOOKER, J. Act No. 142, Laws of 1883, was entitled—

"An act to provide for selecting petit jurors in the Upper Peninsula."

The eleventh judicial circuit consisted of several counties of the Upper Peninsula, and the county of Manitou, which is comprised entirely of a number of islands in Lake Michigan. The first section of said act excepted the counties embraced in the eleventh circuit from the provisions of the act.

Act No. 93, Laws of 1885, was entitled—

"An act to amend section 1 of Act No. 142 of the Session Laws of 1883, being an act entitled 'An act to provide for selecting petit jurors in the Upper Peninsula,' so as to include the county of Manitou."

The act reads as follows:

"SECTION 1. That the county clerk, judge of probate, sheriff, and county treasurer of each county in the Upper Peninsula, and of the county of Manitou, are hereby constituted a board for the purpose of selecting a list of names of persons, annually, to act as petit jurors in the circuit courts in such counties."

Under the law of 1883, as thus amended, a jury was

drawn, and the respondent sustained a challenge to the array. The return shows that the respondent held the later act unconstitutional so far as it applied to the eleventh circuit, which included the county of School-craft. It further appears from said return that "the list of names selected by the board from which the jurors in this panel were drawn had not been taken from the assessment rolls of 1893, as required by law, but that they had been largely taken from the tax rolls of the previous year, and that a large majority of the names so selected, and perhaps nearly all of them, were in fact upon the assessment rolls for the year 1893," but some of them were not upon said rolls. The respondent held that this was not a ground for challenge to the array, but was a cause for challenge of the several jurors whose names were not upon such rolls. Having refused to vacate his order sustaining the challenge to the array, relator asks a *mandamus* requiring it.

Had the clause "so as to include the county of Manitou" been omitted from the title of the act of 1885, there would be much force in the claim that the act is valid so far as it applies to that portion of the eleventh circuit within the bounds of the Upper Peninsula proper, the title of the earlier act being broad enough to cover that portion of the State. See cases cited by counsel: *Board of Supervisors v. Auditor General*, 65 Mich. 408; *Canal Street Gravel-Road Co. v. Paas*, 95 Id. 379. It becomes important to determine whether Manitou county can be considered a part of the Upper Peninsula.

Article 19 of the Constitution is entitled "Upper Peninsula." Section 1 provides that certain counties (indisputably upon the Upper Peninsula, naming them), "and the islands and territory thereunto attached, the islands of Lake Superior, Huron, and Michigan, and in Green Bay and the Straits of Mackinac and the River Ste. Marie, shall con-

stitute a separate judicial district." Section 4 provides that such judicial district shall be entitled to at least one Senator and three Representatives. No allusion is in terms made to the Upper Peninsula in this article except in sections 7 and 8, the former providing for the disposition of taxes paid into the treasury from mining corporations "in the Upper Peninsula." Section 8 provides for the change of location of the State prison "from Jackson to the Upper Peninsula." It will be seen that the Constitution does not say that these counties and islands shall constitute the Upper Peninsula, and it seems to distinguish the islands in the lakes from the islands. *attached* to the counties named, which are upon the Upper Peninsula. The Legislature has almost uniformly attached the county of Manitou to the Lower Peninsula for various purposes; such as the election of Representatives in Congress and members of the Legislature. See Comp. Laws 1857, p. 95; Comp. Laws 1871, p. 102; How. Stat. p. 106,—as to Representative in Congress. For State Senator, see Comp. Laws 1871, p. 105; How. Stat. p. 108. For Representative in the Legislature, see Comp. Laws 1871, p. 106; How. Stat. p. 110. At one time it was attached to the Lower Peninsula for judicial purposes. See Comp. Laws 1871, § 4988. Section 26 of the schedule of the Constitution authorized the Legislature to abolish the judicial district created by article 19.

There seems no reason to call these islands constituting the county of Manitou a part of the Upper Peninsula, unless it be the fact that article 19 is entitled "Upper Peninsula." Most of the islands in that county were nearer the Lower than the Upper Peninsula. No reference is made to the Upper Peninsula in terms by article 19 in any section where this county is necessarily included; and we think section 1 indicates that it was not intended that the "islands in the lakes," as contradistinguished from the

"islands attached to said counties," should be included in the term "Upper Peninsula."

The Court held in the case of *Mays v. Commissioner*, 89 Mich. 460, that State land upon Bois Blanc Island was not subject to selection as land upon the Upper Peninsula in payment for the construction of a State road.    Bois Blanc Island is one of the islands included in the judicial district formed by article 19 of the Constitution.

It is true that for most of the time that the State has existed the county of Manitou has been attached to the whole or some portion of the Upper Peninsula for judicial or other purposes, but as much may be said of some of the counties in the Lower Peninsula.    Section 25 of the schedule of the Constitution attached all of the territory mentioned in article 19 to the third circuit for the election of Regents of the University.    Section 29 of the schedule shows that the third circuit consisted of the county of Wayne.    It would hardly be contended that counties in the Lower Peninsula would be held to be within an act whose title was similar to this merely because such counties were included in the judicial circuit, or congressional, senatorial, or representative district, with some county of the Upper Peninsula; and the impropriety of holding certain territory within the term "Upper Peninsula" for some purposes, and not for others, is apparent.

The confusion likely to arise from uncertainty in regard to the boundaries of the territory meant by the term "Upper Peninsula" would be greater than the inconvenience, if there be any, of having different methods of selecting jurors in the different counties of the eleventh circuit,—an inconvenience which the Legislature can easily remove.    We think, therefore, that Manitou county is not a part of the Upper Peninsula, within the meaning of the law.    By including the clause mentioned, an attempt was

made to include territory not a part of the Upper Peninsula, and the plain inference to be drawn from the title is that this was the only object of the bill. The eleventh circuit is not mentioned in the amendatory act, and it is brought within the former act by omitting the exception in such act. We think the clause mentioned restricted the title, and precluded legislation embracing any other territory than the county of Manitou.

This disposes of the case, but, as the other question appears to be of public importance, we consider it. We think the circuit judge was right in holding that a challenge to the array, upon the ground that the board used the assessment rolls of 1892, instead of 1893, in selecting the names from which jurors were to be drawn, could not be sustained. A majority of these were the names of persons admittedly eligible, and that is sufficient. If others were not, and happened to be drawn, the result was that a sufficient number of qualified jurors did not attend upon the court, and the law points out the procedure in cases where from any cause this happens. See How. Stat. §§ 7575, 7576, 7578, 7580. See, also, *Schlacker v. Mining Co.*, 89 Mich. 253, 261.

We think the views of the learned circuit judge upon both questions were correct, and his order will be affirmed.

The other Justices concurred.