SMALTZ v. BOYCE.[1]

1. Invalid Jury Lists—Authority of Circuit Judge.

Under Act No. 201, Pub. Acts 1893, authorizing the circuit judge to direct the return of new jury lists when the current lists are declared illegal for any reason, it is competent for the circuit judge to make such determination on his own motion, and to order the return of new lists.

2. Jury—Challenge to Array—Instructions of Clerk to Returning Officers.

A jury list is not rendered invalid by the fact that the county clerk instructed the returning officers not to return the names of persons over 60 years of age, since by section 7571, 2 How. Stat., such persons are exempt from jury duty, and section 7555 forbids the listing of persons so exempt. Whether even an erroneous instruction by the clerk would support a challenge to the array,—quære.

3. Same—Validity of Order for New Lists.

The fact that an order for the return of jury lists directs the lists to be made by the aldermen and "supervisors," instead of aldermen and "assessing officers," of wards in cities, is not ground for challenge to the array, when it does not appear that any of the supervisors who returned the lists were not assessing officers.

4. Same—Validity of List.

It is not ground for challenge to the array that the jury list from a given ward was returned by the supervisor and one alderman, where it does not appear that they did not constitute a majority of those charged with the duty of making the return.

5. Same.

The fact that jury lists do not show that the names were taken from the proper assessment roll is not ground for challenge to the array, where it does not appear that any of such jurors were persons who were not assessed on the roll.

[1] Rehearing denied July 8, 1896.

6. SAME.
   A jury list for a given ward is not void merely because it
   is certified by the supervisor alone.

7. MASTER AND SERVANT—WHEN RELATION EXISTS.
   Men employed to work in a logging camp by the owner's
   agent, and upon the owner's credit, are the servants of the
   owner.

8. SAME—SCOPE OF EMPLOYMENT.
   Whether the foreman of a logging camp, in causing the
   men under his supervision, when not otherwise employed, to
   burn the brush on the land, for the purpose of clearing it,
   was acting within the scope of his employment, so as to
   render the owner liable to a third person for damages sus-
   tained by reason of the setting of the fires, is a question for
   the jury, where the time of the men while so employed was
   kept and paid for by the owner, and he received the benefit
   of the crops thereafter raised.

9. OPINION EVIDENCE—ORIGIN OF FIRE.
   A witness cannot give his opinion that the fire by which
   plaintiff's property was destroyed came from fires set on
   defendant's land.

Error to Bay; Maxwell, J. Submitted April 22, 1896.
Decided May 19, 1896.

Case by Michael Smaltz and others against Jonathan
Boyce and another for the loss of property by fire, alleged
to have been caused by defendants' negligence. From a
judgment for plaintiffs, defendant Boyce brings error.
Reversed.

*Simonson, Gillett & Courtright*, for appellant.

*McDonell & Hall*, for appellees.

HOOKER, J. The most important legal question in
this cause relates to the jury; a challenge to the array
having been interposed, to which a demurrer was filed.
The record shows that upon November 24, 1894, at a time
when no jury cases were pending before said court, an
order was made, upon the court's own motion, as follows:

"*In the Matter of the Returns of Lists of Grand and Petit Jurors.*

"It appearing to the court that, in making the selections of persons to serve as grand and petit jurors in this county, the returning officers have disregarded the provisions of law, it is therefore ordered that all such returns for the year 1894 be set aside, and altogether held for naught.

"It is further ordered that the supervisors and town clerks of the various townships, and the supervisors and aldermen of the various wards of the cities, in Bay county, make new lists of persons competent and qualified to serve as grand and petit jurors in this court, as provided by law, and cause the same to be filed with the clerk of this court within 30 days.

"Read, approved, and signed in open court.

                                    "A. C. MAXWELL,
                                        "Circuit Judge."

A letter containing some directions in relation to the return of jury lists, accompanied by a copy of the order, was sent to the several supervisors and clerks of the townships, and aldermen of the wards in cities, within said county of Bay, by the county clerk.

The order determined that the lists were returned illegally. Act No. 201 of the Public Acts of 1893 permits the circuit judge to direct the return of new lists when the current lists are declared illegal for any reason. We have no means of knowing whether this determination was based upon valid reasons or not, and the question is not before us. We are not convinced that such declaration cannot be upheld because made by the circuit judge of his own volition. When it appears that, if a jury be drawn, it cannot stand, if challenged, it would seem to be a proper thing for the judge to take steps to procure a lawful jury, and that litigants have not a right to insist upon drawing from jury lists known to be invalid, merely because some party to an action has not raised the question. *Robinson* v. *Mulder*, 81 Mich. 77; *Atkinson* v. *Morse*, 63 Mich. 279.

This case seems to have been tried at a term subsequent

to that at which the order was made, and before a jury which, for aught that appears, consisted wholly of eligible persons, against which jury only technical reasons are urged. Among other reasons given in support of the challenge is the fact that the clerk sent a notice containing some directions to the officers whose duty it was to return the lists, in which they were directed not to return the names of persons over 60 years of age. This was in strict conformity to section 7555 of 2 How. Stat., which forbids the listing of persons exempt from jury duty. 2 How. Stat. § 7571. We do not, however, mean to imply that the fact that the clerk gave erroneous advice as to the selection of persons would necessarily justify a challenge to the array.

Again, it is claimed that the order directed the supervisors and aldermen of wards in cities to make the lists, instead of aldermen and assessing officers. Usually assessments are made by supervisors, where there are such officers, and we are not informed that any lists were returned by supervisors who were not assessing officers, or that there are any cities in Bay county that have supervisors who are not assessing officers. It is true that we might run the question down, by investigating the several charters of such cities, but we assume that counsel would point out such cases, if there were any. The fact that the order contains the word "supervisors," instead of "assessing officers," we do not consider important, if they both mean the same officer.

We are told that the lists were returned from several wards by the supervisor and one alderman, but we are not informed that in such wards such officers did not constitute a majority of those upon whom the duty was imposed by law. *People* v. *Fuhrmann*, 103 Mich. 597.

It is said that in one ward the supervisor alone certified the list, and that "several of the lists do not show that the names were taken from the proper assessment roll." It does not appear that any of them were persons not

assessed on the assessment roll, and, if it did not, it would not be ground for challenge to the array; and the same may be said of the return from the ward where the supervisor alone certified the list. See *Niles* v. *Schoolcraft Circuit Judge*, 102 Mich. 328; *People* v. *Coffman*, 59 Mich. 1; *Wise* v. *Lumber Co.*, 86 Mich. 40. The challenge was properly overruled.

A short review of the facts is necessary to an explanation of the other points: The plaintiffs were the owners of a shingle mill, and defendant Jonathan Boyce owned and lumbered a tract of land adjoining said mill. The other defendant was his son and bookkeeper, but, as a verdict was directed in his favor, he need not be mentioned further. Jonathan Boyce lived in Grand Rapids, and conducted his lumbering operations through one Manker, his foreman, who was on the ground. Manker took charge of one camp and gang of men personally, and sent a man named Bonneyville as foreman to take charge of another camp near by, from which the fire is said to have come which destroyed plaintiffs' mill. There was evidence tending to show that, when the men were out of work, Bonneyville employed them in clearing the land; several acres being cleared, and afterwards used to raise potatoes, which were subsequently used in the camp. On the day in question the fire was burning in the brush, having been set that day, or the day before. The defendant claims that there is no evidence that he authorized his men to clear this land or burn the brush, and that Bonneyville was not within the line of his employment in causing it to be done, and, therefore, that the court should have directed a verdict for the defendant. It must be admitted that there is no evidence that the defendant instructed his men to set fire, or knew of an intention upon their part to do so; but the fires were set by men employed through Bonneyville, who had authority from Manker, who in turn had authority from the defendant to hire men for the

defendant, who paid them for their labor. We are asked to hold that these men were not servants of the defendant, but we think they were clearly such servants; being employed by his agent, and upon his credit. Manker appears to have been the person in charge of the defendant's business. The men were engaged in clearing and burning and plowing. They had shovels and grub hoes, and other tools. Their time was kept, and payments were made by the defendant for this labor. We may properly infer that he furnished the tools used in clearing and planting this land. He is shown to have had the crops afterwards. We find no evidence indicating that he was surprised or disappointed that his men should have been kept busy at clearing up this land when out of other work. We cannot say that such was or was not generally expected of men engaged in running lumber camps for landowners, and think it was a proper question to leave to the jury, upon the proof.

It is claimed that the opinion of one witness as to the origin of the fire should not have been admitted. One of the vital questions in this cause was whether the mill was burned by fire that came from the defendants' burning. The witnesss mentioned said that in his opinion it did, in answer to the question, "What can you say as to what fire it was that burned the mill, taking all the circumstances?" This was a question for the jury, and not for the witness, and should have been excluded.

The record contains a large number of assignments of error which we think it unnecessary to discuss.

The judgment is reversed, and a new trial ordered.

MONTGOMERY and MOORE, JJ., concurred with HOOKER, J. GRANT, J., concurred in the result. LONG, C. J., did not sit.