Haas v. Chubb.

GEORGE N. HAAS *et al.* v. JEREMIAH CHUBB.

**No. 13,310.**   ( 74 Pac. 230.)

SYLLABUS BY THE COURT.

EVIDENCE—*Press Copies of Way-bills.*   Press copies of way-bills issued by a railroad company, the originals of which are not shown to be lost or destroyed or incapable of production, are not admissible in evidence in an action between third parties, where the person who issued the way-bills and made the copies is not shown to be dead.

Error from Jackson district court; MARSHALL GEPHART, judge.   Opinion filed November 7, 1903.   Reversed.

*Hayden & Hayden,* and *James H. Lowell,* for plaintiffs in error.

*Waters & Waters,* and *A. F. Williams,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: George N. Haas, as sheriff of Jackson county, seized a quantity of hay as the property of Frank Ashton, which was claimed by Chubb, who had cut and put up the hay.   Chubb brought this action on the bond of the sheriff, alleging the

wrongful seizure and conversion of the hay. It appears that an agreement had been entered into by which Chubb sold to Ashton 1000 tons of hay, 500 tons of which was to be delivered on the cars at Hoyt, Kan., at the rate of two cars per day, and the remaining 500 tons to be put in a barn at Hoyt and held there subject to the order of Ashton. There were other provisions as to the time of shipment of the balance, the manner in which the cars should be loaded, and the price to be paid. It was claimed by Chubb that the contract was modified because Ashton was unable to dispose of the hay as rapidly as it was shipped. Under the modification, a part of the hay brought in for shipment was placed in the barn, some of which was subject to the order of Ashton and some was not.

The contention in this case was that the hay seized was not subject to his order and was not his property. To settle the question of ownership, it was thought necessary to show certain shipments of hay from Hoyt to St. Joseph. To do this press copies of way-bills were introduced. An agent of the railroad company produced a book containing the copies, and stated that he did not make the copies, but found the book in the office when he came to Hoyt and took charge of the station. The copies had been made by one of his predecessors. Another witness was introduced, who testified that one Pyle had been an agent at the station ; that he was acquainted with Pyle's handwriting, and that the copies appeared to be of Pyle's handwriting, who, it seems, was outside the county when the trial was had.

It is very doubtful whether the writings introduced would have been admissible as original entries or books of entry in any case. It it true, they appear to be the

only record of the way-bills kept at the station, but they were only copies of the way-bills, which presumably were extant and could have been produced. If the copies were offered as secondary evidence, it can hardly be said that a sufficient showing was made to warrant their admission. Neither the loss nor the inability of the parties to introduce the originals was shown (*Barons v. Brown*, 25 Kan. 410) ; indeed, it was not shown that the way-bills once actually had an existence, or that they were genuine, or even that they had been copied in the book as they were finally issued.

A more serious objection, however, is that the entries made by the agent of the railroad company, whether regarded as original or secondary evidence, were offered in a controversy with which the railroad company had no connection. Neither the company nor its agent represented either Chubb or Ashton. The latter had no control over the. entries, nor had they any right to inspect the book in which they were copied, or to verify the copies as made. As to them the railroad company was a complete stranger. It has been said :

"Entries in the account-books of third persons, not parties to the suit, are not ordinarily admissible, since they usually fall within the description of *res inter alios acta*, and also because they are not made under the sanction of an oath, and the party against whom they are offered has no opportunity to cross-examine." (9 A. & E. Encycl. of L., 2d ed., 937.)

There are some exceptions to this general rule, but the present case does not appear to fall within any of them. A class of entries made by third persons in the ordinary course of business, by one whose duty it was to make them, have been admitted in evidence in some cases, but only after the decease of the person

who made them. (*Price v. The Earl of Torrington*, 1 Salk. 285; *Nicholls v. Webb*, 8 Wheat. 326, 5 L. Ed. 628; *Nourse and wife v. M'Cay and others*, 2 Rawle, 69; *Augusta v. Windsor*, 19 Me. 317; *State v. Phair*, 48 Vt. 366; *Sypher v. Savery*, 39 Iowa, 258; *Fisher et al. v. Mayor*, 67 N. Y. 73; *Lassone v. Railroad*, 66 N. H. 345, 24 Atl. 902, 17 L. R. A. 525; and Stark. Ev., 10th ed., 492.) It was not shown in this case that the agent who made the entries was dead; on the other hand, it appears that he was living at another point in the state and that his testimony could have been obtained.

Our attention is particularly called to the case of *Robinson v. Mulder*, 81 Mich. 75, 45 N. W. 505, where the freight book in which were copied way-bills was received in evidence. In that case, however, the agent who received the goods and who delivered them to the consignee and obtained his receipt was present and testified to the receipt and delivery of the goods, and the freight book was introduced in connection with, and supplementary to, his testimony. The case, therefore, was quite unlike the present one, and the question whether entries of third parties could be received in evidence against the litigants was not considered.

The reception of this testimony is deemed to be material error, and hence the judgment must be reversed and the cause remanded for a new trial.

All the Justices concurring.