### JOHN WALKER v. THE STATE.

No. 3292. Decided February 14, 1906.

#### 1.—Local Option—Evidence—Extraneous Offense—System.

Upon a trial for a violation of the local option law, there was no error in admitting testimony of a similar transaction between defendant and witness, to the one between defendant and prosecuting witness, to show system.

#### 2.—Same—Evidence—Books of Original Entry.

Upon a trial for a violation of the local option law, there was no error to permit a State's witness to testify from his books that barrels and casks of beer were shipped to defendant, the entries in said book having been made by witness from the original waybills sent to him from the point of shipment along with the goods.

#### 3.—Same—Internal Revenue—License—Cold Storage Club—Evidence.

Upon a trial for a violation of the local option law where the State had introduced evidence of the existence of a cold storage club and that defendant was the manager thereof, there was no error in admitting testimony that internal revenue license had been issued to said club.

#### 4.—Same—Case Stated—Subterfuge—Sale.

Upon a trial for a violation of the local option law where the evidence showed that the defendant alone constituted a cold storage club, which he kept up by collecting money from divers parties, furnishing them beer in return therefor, and keeping account of payments and advances thus made, etc., the facts show a thinly disguised sale in each instance, and the evidence sustained the conviction.

Appeal from the County Court of Eastland. Tried below before Hon. C. D. Spann.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $100 and sixty days confinement in the county jail.

The opinion states the case.

*D. G. Hunt* and *J. J. Butts,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of violating the local option law, and his punishment fixed at a fine of $100 and sixty days in jail. This case was tried before the court, without a jury.

Prosecuting witness, Chas. Hartman, testified substantially, as follows: "Defendant, as I understood, was running a cold storage business in Cisco, during the summer of 1904. I told defendant to order me some beer, and gave him $10.50 to pay for it; told him to get me some cases of beer. There are two dozen pint bottles in a case. I got four or five cases. The beer came to defendant, I suppose, as all I did was to give him the money, and some days afterward he told me the beer was at his place of business. I paid defendant one dollar per month to keep it cool for me. When I wanted any beer I went to his place and called for it, and defendant would go to the refrigerator and get it. Sometimes I would drink it out of the bottle, and sometimes I would pour it out in a glass. Gave no written order for the beer, just a verbal order. I ordered beer through or from defendant several times; that is, when he told me I would have to 'dig up' I would give him some more money. I never got any beer from any person other than defendant, except McCall, who was a member of the club, on one occasion. Quite a number of persons living in Cisco belonged to what was known as the 'Cisco Cold Storage Club.' I think defendant organized the club and managed its business; that is, defendant would see the different members of the club, and tell them when he was going to make an order for beer, and give them an opportunity of making an order. I don't know who the officers of the club were, or whether there were any officers. Defendant came to me at the time in question, and asked me I wanted to order any beer, and I told him, 'yes,' and gave him the money. I never paid any freight on the beer, nor did I ever pay any drayage, all I did was when defendant would tell me my beer was out, or that I must 'dig up' I would give him more money. I did not know from whom the beer was ordered, or from where it was ordered, or when it came. I did not know anything about that. All I did was to pay the money to defendant, and get the beer from him as I wanted it. I don't know what the beer cost. I don't know the price of beer. I gave him the money and got the amount of beer I wanted from him. I never got any of the empty cases or bottles back, and had no contract that defendant should have them. I don't know what became of them. The beer I got was supposed to be mine. I don't know whether it was or not. It was all Budweiser Beer."

Appellant objected to witness M. McCall testifying to practically a similar transaction with him as the facts above disclose as to witness Charles Hartman, on the ground that it was proof of a different and extraneous offense. However, under the peculiar facts of this case, we

think this testimony was admissible on the ground, that it tends to prove a character or system of business, and being admissible for that purpose, it was proper for the court to permit its introduction.

Bill number 2 complains that Bulbrook testified to the receipt of various articles of merchandise by him, as local agent of the Texas Central Railroad, at Cisco, consigned to appellant. Said witness was permitted to testify from his books that barrels and casks of beer were shipped to appellant at Cisco. The bill presenting this matter is lengthy, but the main insistence of appellant is, that the witness did not show the memorandum to have been made by himself from which he refreshed his memory. In other words, the evidence of the witness shows that said memorandum was a copy made by witness from the original waybills sent to witness from the point of shipment. The bill shows that the waybills were sent along by the railroad with each separate shipment; that witness Bulbrook, as local agent of the railroad, entered said waybills in a book of original entry, and from this book testified. This testimony was clearly admissible. The objections of appellant are not borne out by the bill of exceptions. But the bill, as explained by the court, shows that the book from which the witness testified, was a book of original entry, kept in the office of the railroad. Robinson v. Mulder, 81 Mich., 75; 9 Am. & Eng. Enc., p. 918.

The fourth bill complains that the State was permitted to prove by L. A. Hightower, the following facts: "I went to the office of the Internal Revenue Collector's Office for the Northern District of Texas, for the purpose of ascertaining who had obtained retail liquor dealer's license in this county. I was shown book number 4, in which licenses, when issued, are recorded. I found that on the 31st day of May, 1903, a retail liquor dealer license was issued to the Cisco Cold Storage Club. This license expired on the 31st day of June, 1904." Appellant objected to this testimony on the ground that the license had expired prior to July 5, 1904, the date of the alleged sale in this case; and that defendant would not be bound by the license issued to a corporation or company other than himself, and with which he had no connection. Appended to this bill is the following explanation: "Witness Hightower was the last witness to testify in the case, and he testified to the above facts after the other witnesses had testified to the existence of the cold storage club in whose name the license was issued, and that defendant was the manager of said club. In fact, the evidence disclosed that he constituted and was the said 'Club' which in reality existed only in name, under and through which the defendant conducted his business of selling beer, and other intoxicating liquors." This testimony was admissible.

The facts of this case show that appellant organized what he called the Cisco Cold Storage Club; that he alone constituted said Club; that he went to divers parties, and upon their payment of a dollar, membership fee and the advance to him of certain sums of money, he would send off for beer and whisky, and would keep an account of the payments advanced by each member of the supposed club, and when the money so

advanced was exhausted by drinking, each member would be called upon for additional money. We see no reason for holding the evidence is not amply sufficient to justify the verdict herein rendered. The facts show a thinly disguised sale in each instance, under a system that was so palpably absurd that it could be hardly dignified by calling it a system. The judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]