PEOPLE *v.* TONNELIER.

1. JURY—COMMISSIONERS—SECRECY.
    It is not required by Act No. 58, Pub. Acts 1905, providing for jury commissioners for Berrien county, that the list selected be kept secret.

2. SAME—CHALLENGE TO ARRAY—PANEL.
    The participation of two persons other than the lawfully appointed jury commissioners in the selection of the panel is sufficient ground for a challenge to the array in a criminal prosecution.

Erorr to Berrien; Coolidge, J. Submitted November 10, 1911. (Docket No. 199.) Decided December 8, 1911.

Victor Tonnelier was convicted of keeping and using a slot machine. Reversed.

*Humphrey S. Gray*, for appellant.

*Franz C. Kuhn*, Attorney General, and *William H. Andrews*, Prosecuting Attorney, for the people.

BROOKE, J. Respondent stands convicted of keeping a gaming room and keeping games of chance by use of a slot machine, and has removed his case to this court by writ of error.

After respondent's plea of "not guilty" had been entered, the names of 12 jurors were drawn from a list returned September 5, 1911, by the following persons acting as jury commissioners for Berrien county: William H. Seitz, Philip Hiler, William H. Watson, Albert Haid, and Benjamin Earl. Before the jury was sworn, a challenge to the array was interposed by respondent. This challenge having been overruled by the court, the jury was sworn, testimony was introduced by the people, and respondent was found guilty. The facts set out in the challenge are admitted by the prosecuting attorney, the sufficiency of which, therefore, is the only question raised upon the record.

The challenge sets out the following facts:

"*First*. That the list of jurors returned for the September, 1911, term of court were so returned September 5, A. D. 1911, and such list was signed by William H. Seitz, William H. Watson, Philip Hiler, Albert Haid, and Benjamin F. Earl.

"*Second*. That William H. Seitz was a jury commissioner of this county, having qualified as such on August 7, A. D. 1911. That the appointment of said William H. Seitz was a reappointment to succeed himself. That William H. Watson having been appointed December 28, A. D. 1910, he qualified as such commissioner February 2, A. D. 1911, and Philip Hiler having been appointed

December 28, A. D. 1910, qualified as such commissioner April 8, A. D. 1911.    That their commissions as issued and signed by the governor of Michigan as jury commissioners for Berrien county, Mich., continued for one year from and after December 28, A. D. 1910, and until December 28, A. D. 1911.

"*Third.* August 7, A. D. 1911, the governor of Michigan appointed William H. Seitz, Albert Haid, and Benjamin F. Earl jury commissioners for the county of Berrien for the term of one year, and such appointees qualified as such commissioners as follows:    William H. Seitz, August 7, A. D. 1911.    Albert Haid, August 19, A. D. 1911.    Benjamin F. Earl, August 21, A. D. 1911.

"*Fourth.* Commissioners William H. Seitz, William H. Watson, and Philip Hiler met in the court-house in the city of St. Joseph, Mich., to select jury lists on August 14, A. D. 1911, and August 15, A. D. 1911, and then and there proceed with the examination of the tax rolls for the petit and grand jurors; also, on August 16, A. D. 1911, and then again continued such examination of the tax rolls; also, they met on August 17, A. D. 1911, but on that date, owing to the governor's having appointed other commissioners, the decision of the prosecuting attorney of Berrien county and of the attorney general relative to such appointment, and as to who were the proper commissioners, was awaited.

"*Fifth.* On August 21, A. D. 1911, the board of five commissioners, William H. Seitz, William H. Watson, Philip Hiler, Albert Haid, and Benjamin F. Earl met in the court-house but transacted no business; also, on August 25, A. D. 1911, the board of said five commissioners again met and adjourned to September 4, A. D. 1911.

"*Sixth.* On September 4, A. D. 1911, the said board of five commissioners met in the court-house and completed the selection of petit and grand jurors, and reported the list selected by such commissioners; all signing the report or selection.

"*Seventh.*    The five members were advised to agree on same list of jurors by the prosecuting attorney of the county of Berrien, and in pursuance of such advice did so meet as one board and agree on the names selected, so that names of jurors were selected by a commission of five members instead of a commission of three members, thereby coercing and compelling the regular and logically

appointed commissioners to select and agree upon names approved by the other two members.

"*Eighth*. That the law presumes and intends there shall be secrecy and that no more than three commissioners regularly qualified shall be present at or have knowledge of the work or discussion of the commission and the selection of the names of jurors, while in this instance five men were present and took part in this selection. Respondent attaches hereto a certified copy of the proceedings had and taken by the said jury commissioners, relative to this list of jurors, and attaches hereto affidavit from William H. Seitz as to the advice given by the prosecuting attorney and the action of the jury commission relative thereto. And this the said respondent is ready to verify, and prays judgment, and that the said panel may be quashed."

The law providing a board of jury commissioners for Berrien county will be found in Act No. 58, Pub. Acts 1905. Section 1 thereof provides that the governor shall appoint a board of jury commissioners, consisting of three persons. It defines their qualifications and term of office. Sections 2–6 set out the duties of the board and the qualifications of the jurors to be selected. Section 7 is as follows:

"Any commissioner who shall cause any person to be selected or who shall propose the name of any person for selection, who shall have made any request to be selected as a juror, or in whose behalf any such request shall have been made, shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished," etc.

Section 8 provides:

"On the completion of the record of the said annual meeting of the said commissioners, the county clerk shall write the names chosen for petit jurors on separate pieces of paper of the same size and appearance, as near as may be, and he shall place the slips of paper containing the names selected from each ward and township of the county, in a separate package, indorse the name of the township or ward thereon and retain the same therein securely sealed until the same are drawn in the manner hereinafter provided."

The question as to which three of the five men, who signed the jury list in question, are in fact duly qualified to act, is not presented. It is, however, conceded by the respondent, as we understand the record, that among the five who so signed are three who were at that time possessed of the necessary legal qualifications.

Nor can it be denied that those three, whoever they may be, acted honestly and in good faith in their efforts to comply with the law and to compile a legal jury list. If they failed, their failure is due to no fault of their own, but rather to an unfortunate legal complication which made it impossible for any three of the five to determine with certainty that they only were duly qualified to act. Facing this situation they applied to the prosecuting attorney, and, acting upon his advice, all five signed the list after participating in its composition.

It is contended by respondent that his challenge should be sustained for two reasons:

(1) Because five instead of three made the selection of names.

(2) Because "the statute contemplates 'secrecy'; that is, that none but the three commissioners and the clerk shall know what names have been selected for jury lists."

With reference to the last point, it is clear that the statute does not in terms require secrecy, and we know of no reason, based upon sound public policy, which would demand that the list, after it was made up, should be kept secret. In many counties of the State such lists are filed with the county clerk and become subject to inspection the same as other public records.

The first ground urged raises a more serious question. The statute provides for three commissioners only. That five men, each claiming to be possessed of the necessary legal qualifications, equally participated in the work of the board, is not disputed. Two of the five acted without lawful authority, and in permitting their interference the three who were rightfully entitled to the office and charged with the performance of its duties acted without the scope

of their authority and in direct disregard of section 7 of the statute. Here, therefore, is a plain and unequivocal failure to comply with the statutory requirements.

Does such failure vitiate the work of the board ?

In *People* v. *Labadie,* 66 Mich. 702 (33 N. W. 806), a challenge to the array was held good upon the ground that the sheriff drew the names from the box instead of the clerk as required by the statute.

In *Fornia* v. *Wayne Circuit Judge,* 140 Mich. 631 ( 104 N. W. 147), a challenge was sustained because the jury was drawn by a member of the board of jury commissioners instead of by the clerk.

In *Niles* v. *Schoolcraft Circuit Judge,* 102 Mich. 328 ( 60 N. W. 771 ), the court sustained the circuit judge in holding that a challenge to the array upon the ground that the board used the assessment rolls of 1892 instead of 1893 in selecting the names from which jurors were to be drawn, could not be sustained, saying:

" A majority of these were the names of persons admittedly eligible, and that is sufficient. If others were not, and happened to be drawn, the result was that a sufficient number of qualified jurors did not attend upon the court, and the law points out the procedure in cases where from any cause this happens."

In *Gott* v. *Brigham,* 45 Mich. 424 (8 N. W. 41), the court, being equally divided, held that a challenge had been properly overruled where the grounds interposed were:

(1) That the judge was not present when the names of the jurors were deposited in the jury box and those of former jurors removed.

(2) That the judge did not determine the number to be drawn for the term, but that 24 were drawn, and he was not present at the drawing.

(3) That they were drawn by the sheriff, and the minute was kept by the clerk and not by the judge, sheriff, or other attending officer.

(4) That the affidavit filed with the list of 300 jurors did not show in detail the proceedings taken to select the list, but only set out that said list was selected in accordance with the statute as affiant verily believed.

The only opinion in this case was written by Mr. Justice GRAVES and is a strong argument in favor of sustaining this challenge. He says:

"The fundamental idea is to secure a legal tribunal, and the change made in the way of evolving it out of the constituents existing in society has not foreclosed the right of parties to insist upon its being constituted in substantial conformity with the laws as established. They may not see fit to complain even in the case of gross errors, and, if they fail to object seasonably and regularly, they must be deemed to have waived the defects. But if they object in proper time and in due form, and show that a substantial deviation from the law has taken place; that positive provisions enacted to secure and guard the right of trial by jury and maintain the purity of that mode of trial, have been violated or disregarded, there is no warrant in our jurisprudence for treating the deviations as harmless irregularities.

"A party so objecting and so substantiating his objection stands on valuable legal rights and is entitled to have the array quashed. The law has prescribed its own methods for the constitution of the tribunal, and has carefully defined what means shall be provided to negative the existence of any error in relation thereto prejudicial to the parties; and it is not fair reasoning to say that such methods may be set aside and that a party reasonably and regularly objecting may be silenced by an answer that it appears from extrinsic sources that he was not injured. The effect of such a doctrine would be to license courts to suspend the laws, if in their opinion no one would be injured thereby as a matter of fact."

This language seems to us peculiarly pertinent when applied to the facts in the case at bar. See, also, *Hewitt* v. *Saginaw Circuit Judge*, 71 Mich. 287 (39 N. W. 56).

Respondent may not have been injured by the failure of the commissioners to comply with the plain statutory mandates; but we are not warranted in indulging in such a presumption.

The conviction is reversed, and a new trial ordered.

OSTRANDER, C. J., and STEERE, MOORE, and STONE, JJ., concurred.