PEOPLE *v.* McNUTT.

1. WITNESSES—REFRESHING MEMORY—CRIMINAL LAW — IDENTIFYING STOLEN CAR.

In a prosecution for having taken and driven away an automobile in violation of Act No. 313, Pub. Acts 1919, testimony by complaining witness identifying a wrecked

car by license, engine, and factory numbers as the one taken was not rendered incompetent because witness refreshed his recollection from memoranda in possession of the police.

2. CRIMINAL LAW—EVIDENCE—SUFFICIENCY—DIRECTED VERDICT.

The trial court was not in error in refusing to direct a verdict of not guilty on the ground that the testimony in reference to identification should be stricken out.

3. WITNESSES—CROSS-EXAMINATION—APPEAL AND ERROR.

Objections to questions asked on cross-examination of a codefendant after it appeared that defendants drove three young girls to Orion in a car claimed to be the one taken, "What arrangements did you two men make to take these girls to Orion?" and after this was answered "None," "Well, isn't that kind of strange?" *held,* without merit.

4. CRIMINAL LAW—WITNESSES—CROSS-EXAMINATION — ADMISSIONS —APPEAL AND ERROR.

Where, on cross-examination of a codefendant, he asked the prosecutor if he didn't think he was as honorable a man as there was in the city, to which the prosecutor replied that he thought witness was an automobile thief, and witness replied "Well, all right, I admit it," it is not apparent how any error was committed, in view of said admission.

5. SAME.

It was proper, on cross-examination, to ask a codefendant where he became acquainted with defendant, and the fact that the answer developed that both had been in the workhouse did not make it incompetent.

6. JURY—CHALLENGE TO ARRAY—CONSTITUTIONAL LAW—COLLATERAL ATTACK.

The constitutionality of Act No. 364, Pub. Acts 1921, creating a separate jury commission for the recorder's court of the city of Detroit, may not be attacked collaterally by a challenge to the array in a criminal prosecution, since the members of said commission are clearly *de facto* officers and their right to the office should be tested in a direct proceeding.   FELLOWS, C. J., and WIEST and CLARK, JJ., dissenting.

Error to recorder's court of Detroit; Heston (Wil-

liam M.), J.   Submitted June 15, 1922.   (Docket No. 91.)   Decided December 5, 1922.

William McNutt was convicted of unlawfully taking possession of and driving away an automobile, and sentenced to imprisonment for not less than 5 nor more than 10 years in the Detroit house of correction. Affirmed.

*Edward N. Barnard* (*Edmund E. Shepherd,* of counsel), for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Allen W. Kent,* Assistant Prosecuting Attorney, for the people.

BIRD, J.   Defendant, with two companions, was informed against in the recorder's court for the city of Detroit for having taken and driven away an automobile belonging to one Joe Stramer, which was standing on Broadway in the city of Detroit, in violation of Act No. 313, Pub. Acts 1919.   Defendant had a separate trial and was duly convicted by a jury.

1. The complaining witness testified that he left his Nash car on Broadway at about 3 o'clock on the afternoon of July 17th; that later when he went to get it it was gone.   That the next he saw it was at Orion in a wrecked condition.   He gave the license number and the engine and factory numbers.   Upon cross-examination he admitted that he refreshed his recollection as to the numbers from memoranda in the possession of the police.   He further admitted his Nash car was no different than any other Nash car of the same kind.   Defendant's counsel then asked to have his direct testimony bearing on the identification of the car stricken out.   This request was denied and error is assigned thereon.   The ruling was correct.   The fact that the witness refreshed his recollection from police memoranda would not render his testimony in-

competent. That fact may have weakened his direct testimony somewhat in the minds of the jurors, but the question of identification was still one for them to decide.

2. The court was in no error in refusing to direct a verdict of not guilty. Counsel's theory was that the testimony of the complaining witness with reference to identification should be stricken out and if this were done there would be no evidence of identification.

3. It is claimed the remarks and questions of the prosecutor to Howard Earl, a codefendant, were improper and prejudicial. After it appeared that defendant and his codefendants drove three young girls in the car to Orion, the cross-examination of Earl by the prosecutor proceeded, as follows:

"*Q. What arrangements did you two men make to take these girls to Orion?*
(Objected to as incompetent, irrelevant and immaterial.)
"*The Court:* It hasn't any bearing unless it is leading up to show knowledge on the part of the defendant at the bar.
"*Mr. Kent:* To show knowledge, if your honor please.
"*Mr. Barnard:* It wouldn't lead up to anything other than a matter that would be immaterial.
"*Mr. Kent:* We are on another question.
"*Mr. Barnard:* I object to it.
"*The Court:* Take the answer.
"*A.* None, whatsoever.
"*Q.* You made no arrangements?
"*A.* No arrangements.
"*Q. Well, isn't that kind of strange?*
(Objected to.)
"*Q.* Two men, yourself and McNutt, pick up one nine-year old girl and three others in short dresses and go to Orion without any arrangement?
"*A.* What is strange about that?
"*Q.* Well, it might not be strange to you.
"*A.* Don't you think I am as honorable a man as there is in this city?

"*Q. I think you are an automobile thief, if you want me to tell you what I think about you.*

"*A.* Well, all right, I admit it.

"*Mr. Barnard:* In view of the prosecutor's statement I think he has made this case a mistrial.   *   *   *
I think the prosecutor's statement is highly prejudicial.

"*Q. You don't know you are an automobile thief, do you?*

"*A.* No, I don't.

"*Mr. Barnard:* I object to it for the same reason."

And a little later:

"I have known Hitsman ever since I come out of the workhouse.

"*Q. Where did you get acquainted with Mr. McNutt?*

"*Mr. Barnard:* This is all objected to, if the court please.

"*The Court:* I think that is a proper question.

"*A.* At the workhouse.

"*Q.* That is all.

"*Mr. Barnard:* That was asked for that purpose, and I ask it be stricken out, and the jury be instructed to disregard it.

"*The Court:* It will be stricken from the record, and the jury are now instructed not to regard that last answer—question and answer."

The language complained of appears in italics. The first objection is wholly without merit. The second objection is more a question of propriety than of law. The witness asked the prosecutor a question and he answered it in an undignified way. The witness admitted he was an automobile thief, so it is not apparent how any error was committed. In answer to the question where he got acquainted with McNutt the witness replied "at the workhouse." Defendant asked that the answer be stricken out and the court struck it out. The question does not appear to be an improper one. The fact that the answer developed that both had been in the workhouse did not make it incompetent. That fact could have been shown by

the prosecutor without transgressing any rules of evidence.

4. The last question raised by defendant is a more serious one.    Before the jury was drawn counsel challenged the array in writing.    The writing is somewhat lengthy and will not be quoted.    It will suffice to say that the challenge is based upon constitutional grounds.    Wayne county, prior to the passage of Act No. 364, Pub. Acts 1921, creating a new jury commission for the recorder's court, had a jury commission which acted for the recorder's court as well as for the circuit court.    In 1921, Act No. 364 was passed creating a separate jury commission to select jurors for the recorder's court.    Defendant claims that the Constitution was violated in the creation of a new commission in that the act was not submitted to the people by a referendum.    He also raises other constitutional objections.

Upon a consideration of this objection we are persuaded that it is a collateral attack upon the power of the members of the jury commission to hold and discharge the duties of the office of jury commissioner. The commission has been discharging the duties of the office since the act became effective, and if its legal existence is to be passed upon it should be done in a direct proceeding where the persons composing the commission can have an opportunity to be heard; otherwise the members of the commission might be divested of their office without an opportunity to be heard.    It is said by Cyc. that:

"The selection of a jury list by a *de facto* jury commissioner is as regular as a selection by a commissioner *de jure*, and is no ground for a challenge to the array.    It is incompetent in this collateral manner to question the commissioner's title to his office, or the validity of the law under which he was appointed." 24 Cyc. p. 213.

The same question as here involved was considered in the criminal case of *Carpenter* v. *People*, 64 N. Y. 483. In that case a challenge to the array was made on constitutional and other grounds. The prosecutor demurred to the challenge. In passing upon the question the court said:

"The challenge to the array of petit jurors is founded wholly upon the allegation that the jurors were not selected by Douglas Taylor, the commissioner of jurors of the county of New York, and that he did not, nor did any person on his behalf, attend the drawing of such jurors. But it is also stated in the challenge that the jurors were selected by Thomas Dunlap, who had been appointed by the mayor of the city such commissioner of jurors. That the mayor exercised a pretended right to appoint Dunlap, but that the act of the legislature under which the mayor appointed him was unconstitutional.

"It thus appears on the face of the challenge that the person who acted as commissioner of jurors had been appointed to that office by the mayor of the city of New York, in pursuance of an act of the legislature, and that under color of that appointment he assumed to, and did, exercise the functions of the office. He was, therefore, a *de facto* officer, whose acts were valid as to the public, so long as he continued to occupy and exercise the functions of the office; and the validity of his appointment could not be drawn in question in this collateral manner. The demurrer to the challenge was, therefore, properly sustained."

A like conclusion was reached in *Commonwealth* v. *Valsalka*, 181 Pa. St. 17 (37 Atl. 405); *Thompson* v. *People*, 6 Hun (N. Y.), 135; *Commonwealth* v. *Clemmer*, 190 Pa. St. 202 (42 Atl. 675); *Dolan* v. *People*, 64 N. Y. 485; *Palmer* v. *Railroad*, 3 S. C. 580 (16 Am. Rep. 750). This principle has also been applied by this court in questions affecting a judicial office. *Gildemeister* v. *Lindsay*, 212 Mich. 299.

But it is argued by defendant that this question has been determined by the case of *People* v. *Tonnelier*, 167 Mich. 638. In that case the law provided for a

jury commission of three men for the county of Berrien. By reason of certain complications it became difficult to determine which three men of the five were the lawful commissioners, so the prosecuting attorney advised that all five of them act. They did so and this furnished the ground for a challenge to the array. That case is distinguishable from the present one, for the reason that it did not involve the act of a *de facto* officer. The law provided for a jury commission of three members. Five persons acted, two of which must have acted without any color of title to the office. Two of the five commissioners who acted were not *de facto* officers, whereas, in the present case, a jury commission for the recorder's court has been acting as such for nearly two years in pursuance of Act No. 364, and the members have been recognized as the lawful occupants of the office and, therefore, are clearly *de facto* officers. If the members of this jury commission had had no color of title to their office it would have presented a different question. In view of this consideration we think the case cited is not controlling of the present one.

Finding no reversible error in the record, the judgment of conviction is affirmed.

McDonald, Sharpe, Moore, and Steere, JJ., concurred with Bird, J.

Fellows, C. J. For the reasons stated by me in *People* v. *Cathey, post,* 628, handed down herewith, I think this case should be reversed.

Wiest and Clark, JJ., concurred with Fellows, C. J.