(November 12, 1909.)

M. E. LEWIS, GERTRUDE L. HAYS, O. E. McCUTCH-EON, E. S. SWEET, and E. H. MOFFETT, as the Regents of the University of Idaho, Plaintiffs, v. JAMES H. BRADY, Governor, C. A. HASTINGS, Treasurer, ROBERT LANSDON, Secretary of State, and DANIEL McDOUGALL, Attorney General of the State of Idaho, Defendants.

[104 Pac. 900.]

CONSTITUTIONAL LAW—CONSTITUTIONAL DEBT LIMITATION — ASSESSED VALUATION OF THE STATE—SECTION 1, ART. 8, OF THE CONSTITUTION.

1. The words "debt" and "liability," as used in section 1, art. 8, of the constitution, are not employed in a technical sense, but have special reference to the basic warrant and legislative authority on which a state contract must rest and on which alone a public debt must find its sanction in order to obligate the state to pay.

2. Under the provisions of sec. 1, art. 8, of the constitution, the basis for computation by the legislature in creating public indebtedness is "the assessed value of the taxable property of the state," and this is a present standard for the guidance of the legislature, and has reference to existing facts and conditions at the time the legislature acts on such legislation.

3. Under the provisions of sec. 1, art. 8, of the constitution, the legislature in the passage of an act creating public indebtedness must be governed by the assessed value of the taxable property of the state as the same has been ascertained and then exists, and such legislation cannot anticipate the future and leave the ascertainment of the assessed valuation to the future acts of ministerial and executive officers.

(Syllabus by the court.)

Original action by the board of regents of the State University against the governor, state treasurer, secretary ·of state, and attorney general, to compel the issuance and sale of certain state bonds as authorized by an act, entitled "An act providing for the issuance and sale of state bonds in the aggregate sum of seventy-three thousand dollars ($73,000), and appropriating the proceeds thereof to the University of Idaho for completing the main or administration building, the central heating plant, for the purchase of lands, and for other equipment and improvements, and authorizing the levy of an annual *ad valorem* tax for providing a sinking fund for the payment of such bonds at maturity and the interest thereon," approved March 17, 1909. Demurrer to the complaint and petition sustained and action dismissed.

Richards & Haga, for Petitioners.

To create a debt in the sense used in sec. 1, art. 8, Idaho constitution, the state must enter into an obligation to pay. This obligation cannot be entered into so that a debt may be thereby created until the legislature authorizes the creation of a debt and the proper officers prepare and execute the bonds and the same have been sold and delivered. (*In re Contracting of State Debt by Loan,* 21 Colo. 399, 41 Pac. 1111.)

A statute passed to take effect at a future day must be understood as speaking from the time it goes into operation and not from the time of passage. Before that time, no rights may be acquired under it, and no one is bound to regulate his conduct according to its terms; it is equivalent to a legislative declaration that the statute shall have no effect until the designated day. (*Santa Cruz Water Co. v. Kron,* 74 Cal. 222, 15 Pac. 772; *Rice v. Ruddiman,* 10 Mich. 125; *Brown v. State* (Wis.), 119 N. W. 338; *Whittaker v. Mutual L. Ins. Co.,* 133 Mo. App. 664, 114 S. W. 53; *James v. State University* (Ky.), 114 S. W. 767.) Sec. 22, art. 3 of the constitution clearly leaves it to the discretion of the legislature to determine the date when an act shall go into effect. (*Shoshone County v. Thompson,* 11 Ida. 141, 81 Pac 73.)

The legislature has the right to say when the debt authorized shall become an obligation of the state, and if at that time the constitutional limit is not exceeded, the issue authorized is valid. (*James v. State University* (Ky.), 114 S. W. 767.)

D. C. McDougall, Attorney General, and J. H. Peterson, Assistant, for Defendants.

Where the word "assessed value" or "assessment" is used, and is made a basis for calculation, it is the assessment which is completed, fixed and final. (Gray, Limitations of Taxing Power, p. 1115; *Culbertson v. City of Fulton,* 127 Ill. 30, 18 N. E. 781; *Prickett v. City of Marceline,* 65 Fed. 469; *Board of Commrs. v. Standley,* 24 Colo. 1, 49 Pac. 23; Abbott, Mun. Corp., p. 347.)

While the debt was not complete and consummated until the issuing of the bonds, it nevertheless was an obligation or liability immediately the act was placed on the statute books. (*Law v. People,* 87 Ill. 385; *Johnson v. Co. Commrs.,* 27 Minn. 64, 6 N. W. 411; *Johnson v. Co. Commrs.,* 93 Minn. 290, 101 N. W. 181; *Kuchli v. Minneapolis,* 58 Minn. 418, 49 Am. St. 523, 59 N. W. 1088; *Beard v. Hopkinsville,* 95 Ky. 239, 44 Am. St. 222, 24 S. W. 872, 23 L. R. A. 402, and note; *Burlington Water Co. v. Woodward,* 49 Iowa, 58; *Prince v. City of Quincy,* 128 Ill. 443, 21 N. E. 768.)

The court should apply a strict rule of construction in determining whether or not the legislature had a right to assume the indebtedness contended for in this act. (1 Abbott, Mun. Corp., p. 324.)

"Acts inconsistent with the spirit of the constitution are as much prohibited by its terms as are acts specifically enumerated and forbidden therein." (*McDonald v. Doust,* 11 Ida. 14, 81 Pac. 60, 69 L. R. A. 220.)

AILSHIE, J.—This is an original application for a writ of mandate. It is prosecuted by the board of regents of the State University against the governor, secretary of state, attorney general, and treasurer of the state of Idaho, officers composing a board for the purpose of the issuance and sale

of certain bonds of the state of Idaho to be known as "University of Idaho Rebuilding and Equipment Bonds of 1909, Series A."

It is alleged that under the provisions of an act of the legislature approved March 17, 1909 (1909 Sess. Laws, p. 407), entitled "An act providing for the issuance and sale of state bonds in the aggregate sum of seventy-three thousand dollars ($73,000), and appropriating the proceeds thereof to the University of Idaho for completing the main or administration building, the central heating plant, for the purchase of lands, and for other equipment and improvements, and authorizing the levy of an annual *ad valorem* tax for providing a sinking fund for the payment of such bonds at maturity and the interest thereon," the defendants are empowered and directed to issue and sell thirty bonds of the state of Idaho of the par value of $1,000 each, payable in two years after date of their issuance, and bearing interest at a rate not to exceed six per cent per annum, the receipts from such sale to be available for the use of the State University as specified and designated in the act.

An examination of the act itself discloses that it authorizes the issuance and sale of bonds in the aggregate amount of $73,000, that the first $30,000 of the issue should be made on September 1, 1909, and the remainder of $43,000 should be made on September 1, 1910. The reason which prompted the legislature to defer the issuance of these bonds was that at the time of the passage of this act the state indebtedness was within about $1,300 of the constitutional limit, as prescribed by sec. 1, art. 8, of the state constitution. The purpose of deferring the issuance of these bonds is very clearly and forcibly indicated by a proviso added to sec. 2 of the act. It reads as follows:

"*Provided, always,* that in the issue of the bonds provided for by this act the constitutional limit of state indebtedness be not exceeded, and that the retirement of outstanding bonds, or the increase of the assessed valuation of the state, or both, occurring between the date of the passage of this act and the dates of issuance of said bonds, be sufficient to bring the

issues of bonds provided for in this act within the constitutional limit of state indebtedness.''

It is alleged in the petition that the state treasurer, and the other state officers acting in conjunction with him, decline and refuse to issue and negotiate the bonds provided to be issued on September 1, 1909, and the petitioners pray that a writ of mandate issue against them, requiring and compelling them to proceed in conformity with the act of March 17, 1909, and issue and negotiate $30,000 worth of bonds.

Defendants demurred to the petition, and among other grounds alleged that the act of March 17, 1909, which purports to authorize and direct the issuance of these bonds, is unconstitutional and void as being in violation of sec. 1, art. 8, of the state constitution. The portion of that section involved in this case reads as follows: ''The legislature shall not in any manner create any debt or debts, liability or liabilities, which shall singly or in the aggregate, exclusive of the debt of the territory at the date of its admission as a state, exceed the sum of one and one-half per centum upon the assessed value of the taxable property in the state, except, etc. . . . . ''

It is first contended by the attorney general that this act is unconstitutional, for the reason that the title is insufficient and does not comply with the requirements of sec. 16, art. 3, of the constitution. The conclusion we have reached, however, on the other question raised renders it unnecessary for us to consider the title to this act.

It is admitted that at the time of the passage of the act authorizing this bond issue it would not have been constitutional to authorize the immediate issue and sale of such bonds for a sum exceeding $1,362. It is claimed, however, that the act must be read and construed as if passed and approved on September 1, 1909, the date on which it authorizes the sale of the bonds. On the latter date this bond issue was not in excess of the constitutional limit. The assessed valuation of the taxable property of the state for 1908, and at the time of the passage of the act in question, was $119,724,181. The aggregate indebtedness of the state, exclusive of the debt of the territory and also exclusive of the debt authorized by

this act, was $1,794,500. The assessed valuation of the taxable property of the state on September 1, 1909, was $120,815,434, and the total indebtedness of the state on that date, exclusive of the territorial debt and exclusive of the debt authorized by the act in question, was $1,754,250. It will be observed that between the time of the approval of this act and September 1, 1909, the indebtedness of the state was reduced $40,250, while the assessed valuation of the state during the same period increased $1,091,253. The question, therefore, to be answered is simply this: Does sec. 1 of art. 8 of the constitution above quoted limit the legislature to the assessed valuation at the time the legislature is enacting and the governor is approving the act, or does it apply to the date at and after which the legislative act authorizes the sale of the bonds? If it refers to the former date, this act is void; if to the latter, it is valid.

Counsel for plaintiff lay considerable stress on the words "debt" and "liability" as they appear in sec. 1 of art. 8, and reason from the definitions of these words that the legislative act does not "create" the debt, but that the "debt" therein mentioned arises only when bonds are sold and the money is received therefor. It is true that the ordinary meaning of the word "debt" is, that which one person is liable to pay or render to another *in praesenti*, or at some future date. But it must have been used in this instance in a less technical sense and with more special reference to the basic warrant and legislative authority on which the contract must rest, and on which alone the debt must find its sanction in order to obligate the state to pay. The framers of the constitution in drafting this section evidently used the words "debt" and "liability" in the sense that they are "created" by the legislative act, and that the preparation and sale of bonds or warrants is only a ministerial act prescribed and directed by the law itself. The real "creative" act in such an indebtedness is the legislative authority for the transaction.

But there is other language used in this section of the constitution which is to our minds more persuasive and convincing than that just considered. The basis of computation by the legislature in creating indebtedness is "the assessed

value of the taxable property in the state.'' This is a present standard for the guidance of the legislature; it is to guide them in the passage of any measure looking to the creation of a debt, and it must exist when they are acting. It has reference to facts that already exist; to an existing condition. They cannot act upon the basis of an ''assessed value'' which does not exist when they act. The ''assessed value'' as here used is a present, existing, ascertained amount, and the legislature is not left to make choice among several valuations or sundry assessments. Neither can it, in our judgment, anticipate the future and leave it to the will and pleasure of ministerial and executive officers, acting as a board of equalization, to so swell the total assessed valuation of the state, as returned by the various counties, that they may in any given year sell state bonds, or not, at their pleasure. It so happened in this case that sufficient bonds were retired to permit the sale of this issue on September 1, 1909, and still be within the debt limit, even though the assessed valuation for 1909 had not increased over that for 1908, but this can make no difference with the principle involved. It might have depended entirely on a raise of the total assessed valuation, and the same officers who are to negotiate and sell these bonds are members of the board of equalization. There is no vice in this fact alone, but it illustrates the danger of such a rule, and the improbability that the framers of the constitution ever intended an interpretation to be placed on this section that would make such a thing possible.

No authorities have been called to our attention that are directly in point. The case nearest in point is that of *Law v. People,* 87 Ill. 385, in which the supreme court of Illinois construed the debt limitation section of the constitution of that state, and arrived at a conclusion analogous to the view we have here expressed. The case of *James v. State University* (Ky.), 114 S. W. 767, is cited by plaintiffs as supporting their position, but we do not think it can be so construed. That was the case of an appropriation to defray the current expenses of maintaining the State University of Kentucky and other educational institutions. A certain

amount of the appropriation was made available each year and was payable out of the annual revenues and income of the state. The court of appeals held in effect that such an appropriation would not amount to a "debt" within the meaning of the constitution. That is in line with the decision of this court in *Stein v. Morrison*, 9 Ida. 426, 75 Pac. 246, wherein it was held that an appropriation of the public revenues in anticipation of their receipt for the current expenses of state government does not amount to a debt within the purview of sec. 1, art. 8 of the constitution.

This provision of the constitution was adopted for the protection of the people against the pressure that might be brought to bear on the members of the legislature for excessive appropriation for the various state institutions, internal improvements, and various other objects and purposes. It was intended to protect the new state from oppressive taxation and bankruptcy such as had befallen other states that had no such protection as a debt limitation in their constitutions. It is a wholesome and salutary safeguard, and no other provision of the constitution should appeal more forcibly to the courts than this.

The act in question is unconstitutional and void in so far as it authorizes the issuance of bonds in excess of the limitation fixed by sec. 1, art. 8, of the state constitution, and based upon the assessed valuation of the year 1908.

The demurrer to the petition is sustained, and the action is dismissed. No costs will be taxed.

Sullivan, C. J., and Stewart, J., concur.