## Jones, Sheriff, v. Citizens' Bank of Hartford.

(Decided March 22, 1929.)

700

OTTO C. MARTIN for appellant.

KIRK & BARTLETT for appellee.

J. W. CAMMACK, Attorney General, M. B. HOLIFIELD, Assistant Attorney General, and TRABUE, DOOLAN, HELM & HELM, amicus curiæ.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The sheriff of Ohio county appeals from a judgment enjoining him from collecting a tax bill from the Citizens' Bank of Hartford, Ky. The question presented is the validity of the Act of March 14, 1924 (Acts 1924, c. 117), amending section 4092, Kentucky Statutes, withdrawing in part from local taxation shares of stock in banks and trust companies incorporated under the laws of this commonwealth and in national banks doing business in this state, in so far as the exemptions of such shares from local taxation affects a special levy of 20 cents on each $100 of taxable property for the benefit of road bonds which were issued under section 157a of the Constitution prior to the enactment of the exemption statute. In March, 1923, Ohio county voted in favor of an issue of $300,000 in bonds for the construction of roads and bridges. Section 157a of the Constitution authorized the county to issue bonds not in excess of 5 per centum of the value of the taxable property therein, for public road purposes, provided the approval of the voters be first obtained. The same section empowered the county to make a levy, in addition to the tax rate allowed under section 157 of the Constitution, in an amount not exceeding 20 cents on the $100 of the assessed valuation of said county, to pay the interest, and to provide a sinking fund for the redemption of the bonds at maturity. It is not clear from the petition, but it may be assumed from an allegation that a levy was made in January, 1924, that the bonds authorized by the vote of the people of Ohio county were issued prior to the enactment in question. Section 171 of the Constitution was amended in 1915 so as to authorize a classification of property for taxation, and pursuant thereto the act of 1924 was passed. Chapter 117, Acts 1924, p. 415. It levied an annual tax of 50 cents on each $100 of the fair cash value of shares of stock in banks, both state and national, doing business in this state, and

provided that said tax should be in lieu of all other state, county, city, town, or other levies, except that counties and cities might impose a tax of not exceeding 20 cents on each $100 of the fair cash value of such shares, and school districts were permitted to levy a tax thereon of 40 cents per $100 of value. The appellee paid the taxes assessed against it under the act of 1924, but declined to pay an additional levy of 20 cents on the $100 for the road bonds.

It is the argument of appellant that section 157a of the Constitution is not affected by any other provision of that instrument, and that the power conferred to levy the tax for the redemption of the road bonds carried with it an implication that the assessed valuation of the property then existing should continue to exist until the bonds were paid. It is argued further that the Legislature, as to pre-existing debts, is not authorized to change the property that is "subject to taxation," and that all property which was subject to taxation when the bonds were issued must continue subject to taxation so long as the bonds are outstanding, regardless of an act of the Assembly to the contrary. We do not doubt that section 157a of the Constitution conferred power upon the county to issue bonds and to make a levy therefor annually; but the levy when made must apply to the property then taxable for local purposes (Cooley on Taxation [3d Ed.] p. 117; Anderson v. City of Mayfield, 93 Ky. 230, 19 S. W. 598, 14 Ky. Law Rep. 370; City of Buffalo v. Le Couteulx, 15 N. Y. 451; Newman v. North Yakima, 7 Wash. 220, 34 P. 921), and there is no provision of the Constitution, express or implied, that an assessment shall remain as it may happen to be when bonds are issued, or that the same property shall remain liable to taxation. On the contrary, the Constitution and all legislation pursuant to it contemplated an annual assessment of property for the purposes of taxation. Indeed, the Constitution provides that, whenever a debt is contracted, provision must be made for an annual levy to discharge the obligation within 40 years. Section 159. Section 157a of the Constitution did not provide any means or machinery for the assessment of property. That section of the Constitution conferred upon the county authority to levy a tax within the limits defined, but the property assessable was not fixed or limited, and the levy was to be applied to the property assessed for taxation for local pur-

poses. What was to be assessed was left to agencies created by other laws passed pursuant to other provisions of the Constitution and they were subject to any change or modification the legislative power prescribed, so long as in harmony with the fundamental law. Cf. Larue v. Redmon, 168 Ky. 487, 182 S. W. 622. It presupposed an assessment under existing laws, and laws that might supplant them. It may be, and probably is, true, in many instances, that the assessed value of property in a county increases from year to year, and the county is authorized to reduce the levy if sufficient funds are produced without going to the limit of the authority conferred. It is necessary to look to other sections of the Constitution and to other statutes for the assessment of property upon which a levy for road bonds may operate. The assessed valuation is taken, not at the time of the vote, but at the time the bonds are issued to determine the amount that may be issued. But it is not expected that the assessed valuation will remain constant. In practical operation we know that the assessed valuation constantly changes and the validity of debts contracted are determined by existing facts at the time the debt is contracted (Lewis v. Brady, 17 Idaho, 251, 104 P. 900, 28 L. R. A. [N. S.] 149), but the annual levies apply to subsequent valuations made from year to year. It is a proper subject of the legislative power, when authorized by the Constitution, to determine what property is or is not subject to local taxation. 37 Cyc. 769. It has never been held that the power to levy a tax in any way hampers the power of the state to determine the particular property on which the tax shall operate. In the case of Gilman v. Sheboygan, 2 Black (67 U. S.) 513, 17 L. Ed. 305, it was said:

"The Act of 1854 (Loc. Acts 1854, c. 1) authorized the borrowing of money, the issuing of bonds, and the levying of a tax upon all the property in the city, for the purposes specified. The imposition, modification, and removal of taxes, and the exemption of property from such burdens, is an ordinary exercise of the power of State sovereignty. There is no pledge, express or implied, that this power should not thereafter be exercised.

"Admitting that the State could enter into such an engagement, there is no evidence that it did. This fact should never be assumed unless the language used be too clear to admit of doubt."

The case was being considered by the Supreme Court as it was affected by the Constitution of the United States, and, in responding to the same argument that is presented here, to the effect that it would violate the contractual rights of the bondholders, the court said:

"If the agreement existed, the complainant is not in a position to make the question. There is no allegation that the tax levied is insufficient. We hear of no complaint from the bondholders. They are not before us. It does not belong to the complainant, vicariously, to enforce their contract and protect their rights."

Again in the case of Williamson v. State of New Jersey, 130 U. S. 199, 9 S. Ct. 457, 32 L. Ed. 915, the Supreme Court of the United States considered the question. The court said:

"The true principle involved in the case is whether the power of taxation on the part of a municipal corporation is private property, or a vested right of property, in its hands, which, when once conferred upon it by an Act of the Legislature, cannot be subsequently modified or repealed. Even without the special provision of the 2d section of the Act of February 18, 1862 (P. L. p. 52), it is to be presumed that the poor farm and the personal property thereon would, while situated in the Township of North Brunswick, be subject to taxation by that township unless exempted from such taxation on the ground of a charitable use. The special question in this case arises, therefore, solely out of the use of the words, in the 2d section, 'at all times hereafter.' The provision of the 2d section, and the contention here made on the part of the collector, necessarily imply the authority of the Legislature to confer the power of taxation upon the township, and the nonexistence of such power unless conferred by the Legislature. The question arising is, therefore, whether the Legislature which passed the Act of February 18, 1862, could lawfully so grant the power of taxation to the township in perpetuity, that a subsequent Legislature could not repeal or modify such grant of power.

"We are clearly of opinion that such a grant of the power of taxation, by the Legislature of a State, does not form such a contract between the State and

the township as is within the protection of the provision of the Constitution of the United States which forbids the passage by a State of a law impairing the obligation of contracts. The conferring of such right of taxation is an exercise by the Legislature of a public and governmental power. It is the imparting to the township of a portion of the power belonging to the State, which it can lawfully impart to a subordinate municipal corporation. But, from the very character of the power, it cannot be imparted in perpetuity, and is always subject to revocation, modification and control by the legislative authority of the State. The authorities to this effect are uniform''—citing numerous authorities.

To the same effect is Arkansas Southern Railway Co. v. Louisiana & Arkansas Ry Co., 218 U. S. 431, 31 S. Ct. 56, 54 L. Ed. 1097, where it was said:

"But there is no such limitation by the state, and no contract by the parish that implies it. An authority given by the state to promise and levy a tax in future years on the taxable property in the parish does not purport to limit the power of the state to say what property shall be taxable when the time comes—at least, by general regulations not aimed at aiding an evasion of the promise it has allowed. A vote by a parish to pay 5 mills on all the taxable property within its boundaries refers on its face to a determination by the sovereign as to what that property shall be. See Arkansas South. R. Co. v. Wilson, 118 La. 395, 401, 42 So. 976. The notion that the statute and the vote, separately or together, precluded the state from erecting a jail that should be free from such claims, is untenable on its face. The same reasoning allows the state to go farther, as it has done. We agree with the Supreme Court that it did not transgress the Constitution of the United States." 26 R. C. L. p. 92; 12 C. J. p. 1006; Board of Supervisors v. Hubinger, 137 Mich. 72, 100 N. W. 261, 4 Ann. Cas. 792.

Prior to the amendment to section 171 of the Constitution, the General Assembly was without power to classify or exempt property from a state or local tax levy. But the amendment adopted in 1915 expressly empowered the legislative department of the government "to

divide property into classes and to determine what class or classes of property shall be subject to local taxation.'' This was a radical change in the policy of the state, and it was pursuant to the power conferred by the amendment to section 171 that the act of 1924 was enacted. Its validity has been consistently recognized. Ky. & W. Va. Power Co. v. Holliday, 216 Ky. 78, 287 S. W. 212; Lorrilard Co. v. Ross, 183 Ky. 217, 209 S. W. 39; City of Henderson v. Geo. Delker Co., 193 Ky. 248, 235 S. W. 732: Gray v. Reynolds Tobacco Co., 200 Ky. 47, 252 S. W. 134; City of Williamsburg v. First National Bank, 211 Ky. 606, 277 S. W. 977.

We are of opinion that the Legislature was within its power in enacting the Act of March 14, 1924, and that the bank shares were liable for taxes only according to that act, and the lower court properly so decided.

The judgment is affirmed.