(No. 6551. April 1, 1938.)

STATE on the Relation of J. W. TAYLOR, Attorney General of the State of Idaho, Plaintiff, v. IRA J. TAYLOR, Commissioner of Public Works of the State of Idaho, and C. C. KENDALL, ED YOUNG and CHAS. DRAKE, County Commissioners of the County of Ada, State of Idaho, Defendants.

[78 Pac. (2d) 125.]

658

J. W. Taylor, Attorney General, Lawrence B. Quinn, E. G. Elliott, R. W. Beckwith and D. W. Thomas, Assistant Attorneys General, for plaintiff.

Willis Moffatt, Prosecuting Attorney, and Kenneth O'Leary, Deputy Prosecuting Attorney, for Defendants, County Commissioners of Ada County.

J. W. Galloway, for Defendant, Ira J. Taylor.

AILSHIE, J.—This is an original proceeding instituted in this court by J. W. Taylor, Attorney General, in his official capacity, praying for a writ, prohibiting the Commissioner of Public Works, entering into a cooperative contract with the Commissioners of Ada county, for the construction and repair of certain sections of "secondary or feeder roads" in Ada county. The contract or cooperative agreement, the execution of which it is sought to prohibit, is as follows:

"THIS AGREEMENT, Made and entered into between the State of Idaho acting through its Department of Public Works by the Commissioner of Public Works, hereinafter

called the 'State,' party of the first part, and the County of Ada, acting through its Board of County Commissioners, hereinafter called the County, party of the second part,

"WITNESSETH:

"WHEREAS, it is proposed by the respective parties to improve and build up to standard and to oil that certain County Road running approximately 7.4 miles due East from the Village of Meridian on a line one mile south of the present alignment of the Old Oregon Trail State Highway (U. S. No. 30) and also to improve and build up to standard and oil approximately four (4) miles of the County Road leading due North from the Village of Meridian,

"NOW, THEREFORE, in consideration of these premises and of the several promises to be faithfully performed by each as hereinafter set forth, the State and County do hereby mutually agree as follows:

"The County will improve the said 7.4 miles of County Road from Meridian East and the said 4 miles from Meridian North, and build up to standard and surface the same ready for oiling at its sole cost and expense. The State will furnish necessary engineering and furnish and apply necessary road oil at its sole expense.

"The County will acquire all necessary right of way on each of the above mentioned projects, and, after completion, will maintain the same to the satisfaction of the State.

"All construction work on each of said projects shall be done to the satisfaction of the State.

"Wherever in this Agreement the word 'standard' is used it means the standard prescribed by the Commissioner of Public Works.

"That certain Agreement entered into between the said parties, dated November 16, 1937, for the cooperative improvement of said projects and also of that certain highway, designated as Star South is hereby rescinded and cancelled, this Agreement being intended to supersede the said Agreement of November 16, 1937.

"IN WITNESS WHEREOF the party of the first part has caused these presents to be executed by its Commissioner of Public Works and the seal of the Department of Public Works affixed thereto, and the party of the second part has

caused these presents to be executed by the Chairman of the Board of County Commissioners and its corporate seal affixed this —— day of ——, 1938.''

It is contended by the attorney general that there is no valid statute in this state authorizing the commissioner of public works to enter into the foregoing contract. The commissioner contends that full authority has been granted by chap. 248 of the 1937 Session Laws (1937 Sess. Laws, p. 446) which added subsec. 16 to sec. 65–3101, I. C. A., reading as follows:

''16. To cooperate with the Federal Government, counties, highway districts, good road districts, and municipalities for the construction, improvement, and maintenance of secondary or feeder roads not upon the state highway system.''

The attorney general assails this statute on the asserted grounds that it is invalid and unconstitutional, for the following reasons: (1) that it violates art. 3, sec. 16, of the constitution, because the title to the act (chap. 248, 1937 Sess. Laws) embraces more than one subject and matters properly connected therewith; (2) that it violates art. 3, sec. 1, for the reason that it attempts to delegate legislative power to the department of public works; (3) that it violates art. 4, sec. 11, of the constitution, in that it attempts to make a general continuing appropriation of funds for promiscuous use without being itemized in such a manner as to allow the governor the free exercise of the veto power to disapprove any given item; (4) that it violates art. 7, sec. 13, for the reason that the attempted appropriation of public funds to the department generally is contrary to the prohibitions of this section.

Turning our attention to the first objection, that is, that the title to the act is invalid, we find the following title:

''AMENDING SECTION 65–3101, IDAHO CODE ANNOTATED, AS AMENDED BY CHAPTER 165 OF THE SESSION LAWS OF 1933, AS PASSED BY THE TWENTY-SECOND SESSION OF THE LEGISLATURE OF THE STATE OF IDAHO, AS AMENDED BY CHAPTER 5 OF THE SESSION LAWS OF 1935, AS PASSED BY THE SECOND EXTRAORDINARY SES-

SION OF THE TWENTY-THIRD SESSION OF THE LEGISLATURE OF THE STATE OF IDAHO, RELATING TO THE POWERS AND DUTIES OF THE DEPARTMENT OF PUBLIC WORKS BY ADDING A NEW SUBDIVISION THERETO TO BE KNOWN AS SUBDIVISION 16, EXTENDING SUCH POWERS AND DUTIES IN CONNECTION WITH SECONDARY AND FEEDER ROADS AND AMENDING SECTION 39–2112, IDAHO CODE ANNOTATED, AS AMENDED BY CHAPTER 19 OF THE 1933 SESSION LAWS, AS PASSED BY THE TWENTY-SECOND SESSION OF THE LEGISLATURE OF THE. STATE OF IDAHO RELATING TO THE APPROPRIATION OF MONEYS IN THE STATE HIGHWAY FUND; AND DECLARING AN EMERGENCY.''

It will be seen from the foregoing quotation that, after identifying the act to be amended, it is declared that the .amendment is ''relating to the powers and duties of the department of public works by adding a new subdivision thereto to be known as subdivision 16,. extending such powers and duties in connection with secondary and feeder roads'' and with reference to the amendment to the further section, 39–2112, it concludes by saying, ''relating to the appropriation of moneys in the state highway fund; and declaring an emergency.''

Reference to the statute itself, as well as to the title, discloses that no new subject of legislation was introduced and that it was only proposed to amend the statute for the purpose of broadening and extending the powers theretofore granted. This title is sufficient under the rule heretofore adopted in this state in relation to amendatory acts. (*Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 324, 68 Pac. 295, 101 Am. St. 201; *State v. Jones,* 9 Ida. 693, 75 Pac. 819; *Vineyard v. City Council,* 15 Ida. 436, 440, 98 Pac. 422; *Garrett Transfer etc. Co. v. Pfost,* 54 Ida. 576, 583, 33 Pac. (2d) 743; see, also, *State v. Pioneer Nurseries Co.,* 26 Ida. 332, 143 Pac. 405; *Boise City v. Baxter,* 41 Ida. 368, 376, 238 Pac. 1029; *Chambers v. McCollum,* 47 Ida. 74, 272 Pac. 707.)

The contention that the statute violates art. 3, sec. 1, in that it attempts to delegate the legislative power, is based on the ground that the statute (subsec. 16, sec. 65–3101, above

quoted) authorized the department "to cooperate" with the federal government in relation to "secondary or feeder roads," and fails to define what it meant by "cooperate" or what is intended by "secondary or feeder roads" and leaves that to the department to determine for itself, and it is argued that such is a legislative rather than a ministerial function. The words employed, "cooperate," "secondary" and "feeder," are words of general use and common knowledge and apparently need no special legislative definition. As employed in the statute under present consideration, the legislature evidently had in mind the *federal statute which undoubtedly invited the adoption of this act.*

Sec. 7 of the Act of Congress of June 16, 1936, 49 U. S. Stats. at Large, p. 1521, chap. 582, provides as follows:

"In addition to any other authorizations which have been made, there is hereby authorized to be appropriated to the several states to be apportioned and expended under the provisions of the Federal Highway Act of 1921, as amended and supplemented: The sum of $25,000,000 for the fiscal year ending June 30, 1938; the sum of $25,000,000 for the fiscal year ending June 30, 1939; *Provided,* That the sums herein authorized shall be applied to secondary or feeder roads, including farm-to-market roads, rural free delivery mail roads, and public-school bus routes."

Acting under this statute, the Secretary of Agriculture, on February 9, 1937, and shortly prior to the enactment of chap. 248 of the 1937 Session of the Idaho legislature (approved Mar. 17, 1937) adopted and promulgated an order defining "secondary or feeder roads" as follows:

" 'Secondary or Feeder Roads' shall mean *roads outside of municipalities, except as hereafter provided, which are not included in the Federal-aid highway system, and shall include farm-to-market roads, mine-to-market roads, rural free delivery mail roads, public school bus routes and other rural roads of community value which connect with important highways or which extend reasonably adequate highway service from such highways, or which lead to rail or water shipping points or local settlements. The limitation with respect to roads within municipalities shall not be construed to prevent improvements into or through small muni-*

cipalities when such improvements are necessary for continuity of service.'' (Public No. 686—74th Congress.)

 We take judicial notice of the regulations adopted by that department. (Sec. 16–101, I. C. A.; *McFall v. Arkoosh*, 37 Ida. 243, 215 Pac. 978.) The legislature no doubt had before it the foregoing rule as promulgated by the department at the time it amended sec. 65–3101 as above indicated. We do not think the statute in any way contravenes art. 3, sec. 1, of the constitution. It seems to be an accepted rule of judicial decision that the legislative function has been complied with, where the terms of the statute are sufficiently definite and certain to declare the legislative purpose and the subject matter meant to be covered by the act; and that the legislature may constitutionally leave to administrative agencies the selection of the means and the time and place of the execution of the legislative purpose, and to that end may prescribe suitable rules and regulations. (*Panama Refining Co. v. Ryan*, 293 U. S. 388, 55 Sup. Ct. 241, 79 L. ed. 446, 447, *Schechter v. United States*, 295 U. S. 495, 55 Sup. Ct. 837, 79 L. ed. 1570, 97 A. L. R. 947, and *Vallat v. Radium Dial Co.*, 360 Ill. 407, 196 N. E. 485, 99 A. L. R. 607.)

It is contended that the part of chap. 248, which attempts to amend sec. 39–2112, appropriating highway funds generally to the use of the ''Department of Public Works, for the purpose of defraying all administrative expenses of the Department of Public Works, including salary of the Commissioner and salaries and/or wages of all subordinates and employees, expenses of traveling, communication, supplies, equipment, fixed charges and all other necessary expenses of the Department of Public Works,'' violates art. 4, sec. 11, and art. 7, sec. 13, because it is a promiscuous blanket appropriation to all the bureaus and branches of the department of public works; and that it also deprives the governor of the right to veto any specific item thereof. We will consider these two objections together as they are intimately associated.

The State Highway Commission was originally created by House Bill No. 173, approved March 14, 1907 (1907 Sess. Laws, p. 466). That commission was continued with changes

of personnel and amendments prescribing its duties and directing its activities (chap. 64, 1915 Sess. Laws, p. 158; 1919 Sess. Laws, p. 64) until finally in 1919 the duties and powers of the state highway commission were merged in and taken over by the department of public works. (Chap. 8, of 1919 Sess. Laws, pp. 43, 64; sec. 65–3101, I. C. A.) The latter department was authorized to take over the duties of several previously existing offices, commissions, boards and bureaus. (See, also, 1933 Sess. Laws, p. 295; 1937 Sess. Laws, p. 446.)

The general state highway commission act of March 13, 1913, was devoted exclusively to the subject of establishing a state highway system, laying out and constructing roads and bridges and raising revenue for such purpose, the registration of motor vehicles and the regulation of motor vehicle traffic. (Chap. 179, p. 558, 1913 Sess. Laws.) This latter act provided that the commission should consist of the Secretary of State, the state engineer and three commissioners to be appointed by the Governor. Sec. 10 of that act created the "State Highway Fund" and specified the particular moneys that should go into that fund; and sec. 11 made a continuing appropriation of the "State Highway Fund . . . . for the purpose of defraying the expense, debts and costs incurred in carrying out the provisions and purposes of this Act." The section further provided that "all claims against the said State Highway Fund shall be examined by said Highway Commission and certified to the State Auditor, who shall thereupon draw his warrant against said highway fund for all bills and claims so allowed by said State Highway Commission."

So it will appear that when this continuing appropriation was first made, it was made *solely* for the purpose of defraying costs, expense and debts incurred in carrying out the provisions of the state highway act; in other words, for laying out and constructing highways and such work as was necessarily incident to the general purposes of the act. This section was amended from time to time and finally carried into the annotated codes; and in 1933 the legislature, by chap. 19 of the session laws of that year, amended the section so as to provide that the appropriation should extend to

"the purpose of defraying all administrative expenses of the Department of Public Works, including salary of the commissioner and salaries and/or wages of all subordinates and employees, expenses of traveling, communication, supplies, equipment, fixed charges and all other necessary expenses of the Department of Public Works, not otherwise provided for." (1933 Sess. Laws, p. 25.)

The amendment to the foregoing section, made by the act of March 17, 1937, extended the appropriation by inserting the words "powers and duties of the Department of Public Works as provided by law." This insertion was evidently induced by the addition of subsection 16 as an amendment to sec. 65–3101. When we turn to the appropriation bill made for the department of public works, chap. 247, p. 442, 1937 Sess. Laws, we find that on the same date, Mar. 17, 1937, the legislature made *specific appropriations* to the department of public works as follows:

"DEPARTMENT OF PUBLIC WORKS
Administration
(State Highway Fund)
* . . . . $18,962.00

DEPARTMENT OF PUBLIC WORKS
State Highway Administration
(State Highway Fund)
. . . . $276,830.00

DEPARTMENT OF PUBLIC WORKS
Capitol Maintenance
(General Fund)
. . . . $96,001.00

DEPARTMENT OF PUBLIC WORKS
Heyburn Park
(General Fund)
. . . . $8,885.00

DEPARTMENT OF PUBLIC WORKS
Heyburn Park
(Heyburn Park Fund)
. . . . $2,700.00

---

*(Where stars are inserted, *items* are enumerated in the act.)

DEPARTMENT OF PUBLIC WORKS
Bureau of Aeronautics
(Aeronautics Fund)
.... $13,590.00

DEPARTMENT OF PUBLIC WORKS
Contractor's License
(Contractor's License Fund)
.... $6,000.00"

In so far as specific appropriations were made to different boards, bureaus or agencies of the department of public works, by chap. 247, *supra,* those appropriations mark the limit of expenditure intended for each of such boards, bureaus or agencies; and consequently the general continuing appropriation made by sec. 39–2112 could have no application or effect with respect to these specific boards, bureaus and agencies of the public works department. ''Where two acts deal with a common subject matter, the one which deals with it in the more minute and particular way will prevail.'' (*Herrick v. Gallet,* 35 Ida. 13, 20, 204 Pac. 477; *Boise City Nat. Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93; *Oregon Short Line R. R. Co. v. Minidoka County,* 28 Ida. 214, 218, 153 Pac. 424; *State v. Jones,* 34 Ida. 83, 199 Pac. 645; *Berg v. Carey,* 40 Ida. 278, 282, 232 Pac. 904.)

An analysis of these acts convinces us that the appropriation made by sec. 39–2112, as amended by chap. 248 of the 1937 Session Laws, can and does *extend only to the state highway department,* in the exercise of its powers, in the laying out, constructing, repair of highways and cooperation with agencies named in subsection 16 of sec. 65–3101, and ''expenses, debts and costs'' incurred thereby in its capacity *as a ''state highway commission'';* and in this respect it clearly does not grant any appropriation for salaries of regular officers and employees, services other than personal, supplies, equipment, rents, fixed charges, wages to extra help, expert and special, as itemized in chap. 247, *supra,* since specific appropriations for those purposes are made by that act.

We conclude that the act in question is not obnoxious to the constitutional provisions urged against it. The alterna-

tive writ is discharged and the petition is dismissed. No costs awarded.

Holden, C. J., Givens, J., and Stevens, D. J., concur.

MORGAN, J., Dissenting.—The contract set out in the foregoing opinion contains matter which may render it unnecessary to decide the constitutional questions discussed. The rule is well established in this state that the constitutionality of a law will not be passed upon unless it is absolutely necessary to do so in order to decide the case. (*State v. Ridenbaugh,* 5 Ida. 710, 51 Pac. 750; *State v. Baker,* 6 Ida. 496, 56 Pac. 81; *In re Fred Marshall,* 6 Ida. 516, 56 Pac. 470; *McGinness v. Davis,* 7 Ida. 665, 65 Pac. 364; *Jack v. Village of Grangeville,* 9 Ida. 291, 74 Pac. 969; *State v. Jones,* 9 Ida. 693, 75 Pac. 819; *Mills Novelty Co. v. Dunbar,* 11 Ida. 671, 83 Pac. 932; *Kimbley v. Adair,* 32 Ida. 790, 189 Pac. 53; *Logan v. Carter,* 49 Ida. 393, 288 Pac. 424; *In re Allmon,* 50 Ida. 223, 294 Pac. 528.)

It is agreed in the contract that Ada county will "build up to standard and surface" certain county roads and make them ready for oil, and that the state will furnish necessary engineering and furnish and apply necessary oil to the roads. It is also agreed, as a part of the consideration for the service and material to be supplied by the state, that the county will, after completion, maintain the roads to the satisfaction of the state; also that all construction work shall be done to the satisfaction of the state. The contract further provides that wherever the word "standard" is used therein it means the standard prescribed by the commissioner of public works.

This contract presents the question as to the right of the board of county commissioners to delegate its discretionary powers to the state and to its commissioner of public works.

I. C. A., sec. 30–705, specifies, among the powers of boards of county commissioners, the following:

"To lay out, maintain, control and manage public roads, turnpikes, ferries and bridges within the county, and levy such tax therefor as authorized by law."

Undoubtedly, the laying out, maintenance, control and management of public roads involves the exercise of discretion by the board of county commissioners. In *Johnson v. Young,* on rehearing, 53 Ida. 275, 23 Pac. (2d) 724, discussing a contract executed by a board of county commissioners, we said:

"Furthermore, the board of county commissioners has, by this contract, attempted, in violation of law and of the public policy of the state, to delegate powers which it possesses with respect to county property, and which involve the exercise of judgment and discretion. . . . . "

There is nothing in the constitution to prohibit the legislature from authorizing boards of county commissioners to delegate their discretionary powers, but unless it has so authorized, they cannot be delegated. The question narrows down to this: Is anything to be found in the statute authorizing boards of county commissioners to delegate to the state, or to its commissioner of public works, power and authority to direct and control the construction and maintenance of county roads?

This case presents a controversy between the state and one of its counties. It is a matter of great public importance and the validity of the contract should be determined before money is expended in an attempt to carry out its terms.

The questions above suggested have not been urged by the parties. Because of its public importance, I am in favor of resubmitting the case to counsel with the request that they brief the questions as to whether this contract is an attempt on the part of the board of commissioners of Ada county to delegate its discretionary powers, and as to whether or not the statute authorizes such delegation.