## Magruder et al. v. Griffith, Co. Atty.

(Decided June 21, 1938.)

CARY, MILLER & KIRK and HERMAN A. BIRKHEAD for appellants.

DANIEL M. GRIFFITH, JR., for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE STITES—Reversing.

This is an appeal from a judgment of the Daviess Circuit Court sitting in equity. Appellants, who were the plaintiffs below, are the members of the Fiscal Court of Daviess County, and they have brought this suit both in their individual capacities and as the Fiscal Court. The appellee is the county attorney. In the petition as amended appellants set forth their election and qualification as county commissioners and that their predecessors in office have been paid compensation at the rate of $6 per day for actual court attendance, as provided in Section 1845 of the Kentucky Statutes. It is alleged that the fiscal affairs of Daviess County are extensive and require a considerable amount of attention and that the extent and complicated nature of such affairs are largely increased by the fact that the City of Owensboro is located in the county. It is set out that although Owensboro has long since advanced in population beyond the number of 20,000, so that it should have been classified as a second class city, it has nevertheless remained a city of the third class due to the failure of the Legislature to enact a law changing its classification.

The appellee questioned the right of the appellants to be compensated under the provisions of Section 1845 of the Kentucky Statutes or under Section 1847 of the Kentucky Statutes, the latter of which fixes the compensation of the members of the Fiscal Court in counties containing cities of the second class. Appellee contends, and it was held by the trial court, that the compensation of appellants must be fixed at a sum not in excess of $600 per annum, as provided by Chapter 65 of the Acts of the General Assembly of 1916. Barnett v. Caldwell, 231 Ky. 514, 21 S. W. (2d) 838. It is argued by appellants that Section 1847 of the Statutes, in classifying counties having a city of the second class, intended to adopt a rule of classification based on population, and not simply on the fortuitous circumstance that a city of the second class happened to be located within the county. So far as pertinent to the instant case, Section 1847 now provides:

"The said commissioners shall each be paid out of the county levy in lieu of all fees and in full compensation for [their] services as follows:. In counties having a city of the second class not more than two thousand dollars ($2,000.00) per annum, payable monthly, and same to be fixed by the fiscal

court. In all other counties said commissioners shall receive such compensation as may be provided by law.''

It is claimed that if Section 1847 is to be literally interpreted on the basis of the class of the city located in the county, this would render such classification unconstitutional, as being based upon a fact immaterial to the purposes for which the classification was made. While it is conceded that the population of a county may furnish a point of difference upon which governmental classifications could be based, it is pointed out that in the instant situation the City of Owensboro is actually larger than two of the five cities of the second class in the State, and yet it has remained, through inaction on the part of the Legislature, a city of the third class.

We are unable to agree with appellants' reading of Section 1847. The use of such classification is too common to admit of misconstruction. So far as appellants are concerned, once it is concluded that Section 1847 applies only to counties containing cities of the second class, it is immaterial to them whether the act is constitutional or not. They are therefore in no position to raise the question. Jones v. Citizens' Bank, 228 Ky. 699, 15 S. W. (2d) 468.

The case of Community Hospital v. Barren County Fiscal Court, 244 Ky. 672, 52 S. W. (2d) 896, upon which they rely, is distinguishable from the case at bar in that it was there attempted to provide for community hospitals without any distinctive or natural reason for the classification between counties thus made. Clearly, there may be a distinctive and natural reason for treating differently the strictly governmental functions of counties containing cities of the first and second classes from counties containing cities of lower classification.

By Chapter 65 of the Acts of 1916, Section 1847 of the Statutes was amended by adding Subsection 2, which provided for paying county commissioners as follows:

"In counties having a population of more than thirty thousand and less than fifty thousand inhabitants, six hundred dollars per annum, payable monthly; in counties having a population of fifty thousand or more and less than one hundred thou-

sand inhabitants, one thousand dollars per annum, payable monthly; in all other counties such compensation as may be provided by law.''

In 1920 the Legislature passed an act known as Chapter 115 of the Acts of that year, which purported to amend Section 1847, Kentucky Statutes, Carroll's Edition, 1915. No reference was made in the title or body of the Act to Subsection 2 of the 1916 Act, and it was held in Barnett v. Caldwell, supra, that the 1920 Act did not repeal Subsection 2 of the 1916 Act. Barnett v. Caldwell, supra, was decided without reference to the Act of 1926 (Chapter 58) which undertook to amend and re-enact Section 1847, but which again referred to that section as a part of the 1915 Edition of the Statutes as amended in 1920 and again ignored the 1916 Act, although it is said, in passing, in that opinion that ''although the 1916 act is not mentioned in this 1926 act, its provisions, where inconsistent with the 1926 act, stand repealed.''

We are left, therefore, with the question whether or not the provision in the 1926 Act providing for the payment of not more than $2,000 per annum to commissioners in counties having a city of the second class is inconsistent with Subsection 2 of the 1916 Act and has therefore repealed it.

Section 156 of the Constitution assigns cities with a population of 100,000 or more to the first class and cities with a population of 20,000 or more, and less than 100,000, to the second class, but it is provided that ''no city or town shall be transferred from one class to another, except in pursuance of a law previously enacted and providing therefor.'' Plainly the classification by counties in accordance with the class of the city contained therein is a rough and ready approximation in accordance with population. Except for the fact that a city may not be transferred from one class to another without an act of the Legislature, even though by population such a transfer is required, it is obvious that the scheme thus adopted would be in almost every case an exact classification on population. The only exception would be, of course, the situation of a county having such a large population outside the limits of any city as to alter the category in which it should be placed.

Section 1847, as it now stands amended by the 1926 Act, purports to fix a limitation on the salary of com-

missioners in those counties only which contain a city of the second class. If it did not repeal the 1916 Act in toto, it would result in glaring inequalities as between the salaries of commissioners of one county and of another of practically the same population. On the other hand, if the 1916 Act is repealed then the classification is not an unreasonable one, and commissioners in counties other than those containing cities of the first and second class will be placed upon a footing of substantial equality in remuneration for their labors. Grave doubts might exist as to the constitutionality of the 1926 Act if it should be considered as complementary and not supplementary to the 1916 Act. While repeals by implication are not favored in the law, it is also true that it is our duty so to construe an act of the Legislature as to render it constitutional and not unconstitutional if this can be done without violence to its intent. We could hardly sustain a classification of counties by population outside of counties having cities of the second class if such classification stood alone. There could be no reasonable basis for setting up such a group apart from the remainder of the State. We do not think that the Legislature intended to create such a class by process of erosion. It seems to us to be perfectly clear that the continuance of Subsection 2 of the 1916 Act without an express repeal thereof by either the 1920 Act or the 1926 Act has been the result of mere oversight or carelessness upon the part of the draftsman of those acts and that the 1926 Act evidences an intention to supersede its provisions. This is apparently the view held by the editors of the Kentucky Statutes, for they have never carried Subsection 2 of the 1916 Act in any compilation, although they have referred to the decision of this court in Barnett v. Caldwell, supra, in their annotations to section 1847.

Our conclusion that the 1926 Act operated to repeal the 1916 Act in its entirety renders it unnecessary that we extend our discussion further. The appellants are entitled to the compensation claimed under Section 1845 of the Statutes and the trial court erred in concluding otherwise.

Judgment reversed.

Whole Court sitting.