362 P.2d 1078

Norman R. HAMMOND, Morgan Van Orden, Clinton V. Murdock, Burke K. Poole, and Darwin L. Young, as Trustees of Class "A" School District No. 52, of Bingham County, Idaho, Plaintiffs,

v.

E. E. BINGHAM, as Clerk of the Board of Trustees of Class "A" School District No. 52, of Bingham County, Idaho, Defendant.

No. 9031.

Supreme Court of Idaho.

June 20, 1961.

Furchner & Stufflebeam, Blackfoot, for plaintiffs.

Anderson & Beebe, Blackfoot, for defendant.

Parry, Robertson & Daly, Twin Falls, amicus curiae.

Burcham & Blair, Spokane, Wash., amicus curiae.

John C. Hepworth, Buhl, amicus curiae.

McFADDEN, Justice.

On March 7, 1961, a school bond election was held in Class "A" School District No. 52, Bingham County, Idaho, to determine whether the Board of Trustees should be empowered to issue negotiable coupon bonds of the district in the amount of $370,000. The election carried by the requisite two-thirds majority.

Later the board advertised the bonds for sale and received bids at the board's meeting on April 12, 1961. At that meeting the board authorized issuance of the bonds, fixing details concerning them. The clerk of the board, defendant here, after demand, refused to countersign the bonds, as required by I.C. § 33–912. Defendant outlined in his letter his reason for refusal to countersign the bonds which generally challenges the bond proceedings, and questions the incurring of an indebtedness in excess of 10% of the assessed valuation of the district, and contends the provisions of S.L.1961, Ch. 89, are unconstitutional and void.

Plaintiffs, members of the Board of trustees of the school district, instituted this original proceeding for writ of mandate to compel defendant, as clerk, to countersign the bonds authorized. Alternative writ of mandate issued, and defendant by his re-

turn to the writ presents for determination by this court, the issues outlined in his letter of refusal.

■ While a determination of the constitutional question may not be essential to the final decision in this case, nevertheless the merits of the controversy cannot be completely determined without a consideration of such question. Counsel for the parties and amici curiae, representing various school districts represent the determination of the constitutionality of S.L. 1961, Ch. 89, is essential because of the numerous pending bond proceedings designed to meet the demands of needed school construction and improvement; counsel also represent the real purpose of this action is to resolve such constitutional question. The number of students, parents, educators, taxpayers, prospective bond purchasers and public officials concerned, all as pointed out by counsel, constitute this a matter of such public concern and vital importance to the welfare of this state, that we shall make such determination. State ex rel. Bland v. St. John, 244 Ala. 296, 13 So.2d 161; Sarlls v. State, 201 Ind. 88, 166 N.E. 270, 67 A.L.R. 718; Battles v. State, 206 Okl. 444, 244 P.2d 320; State ex rel. West v. Thomas, 62 N.M. 103, 305 P.2d 376; 16 C.J.S. Constitutional Law § 94, p. 321; Boughton v. Price, 70 Idaho 243, 215 P.2d 286; Rich v. Williams, 81 Idaho 311, 341 P.2d 432; Luker v. Curtis, 64 Idaho 703, 136 P.2d

978; Toncray v. Budge, 14 Idaho 621, at page 645, 95 P. 26, at page 34.

The principal issue presented is whether S.L.1961, Ch. 89, complies with the provisions of Idaho Constitutional Art. 3, § 16, which is as follows:

"Unity of subject and title.—Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

The questioned chapter is as follows:

"An Act

"Amending Section 33–909, Idaho Code, to remove therefrom the time limitation; specifying that the favorable vote required for the approval of the issuance of school district bonds shall be that which is now, or may · hereafter, be established by the constitution of the State of Idaho; and otherwise clarifying the language of said section.

"Be It Enacted by the Legislature of the State of Idaho:

"Section 1. That Section 33–909, Idaho Code, be, and the same is hereby amended to read as follows:

"33–909. Bonds—Limitation on Amount—Elections to Authorize Issuance—Definition of Outstanding Indebtedness.—The board of trustees of any school district in the state of Idaho, upon approval of a majority thereof, may submit to the qualified electors who are resident taxpayers of the district, the question as to whether or not the board shall be empowered to issue negotiable coupon bonds of the district in an amount and for a period of time to be named in the notice of election. The amount in * * * *districts not qualified to operate high schools shall not exceed at any time, ten per cent of the assessed valuation thereof less outstanding indebtedness in the aggregate; and the amount in high school operating districts shall not exceed at any time, fifteen per cent of the assessed valuation thereof less outstanding indebtedness in the aggregate.*

"Outstanding indebtedness within the meaning of this section shall be interpreted as the total sum of unredeemed outstanding bonds ** *minus* all moneys in the sinking or bond redemption fund accumulated for the redemption of such outstanding bonds and ** *minus* the sum of all taxes levied for the redemption of such bonds which taxes remain uncollected.

"No person shall vote at any such bond election who is not:

"1. A qualified elector of the district; and,

"2. A bona fide resident thereof for more than thirty days last past; and,

"3. a. A taxpayer; or,

b. The wife or husband of a taxpayer.

"A taxpayer within the meaning of this section is a person who pays taxes on real property or who is obligated as owner or as a contract purchaser to pay taxes on real property within the boundaries of the district.

"Except as herein otherwise provided, such bond election shall be conducted as *are* other school elections. If * *such percentage as now is, or may hereafter be, set by the Constitution of the state of Idaho*, of the votes cast at such election are in favor of the issuance of such bonds the same may be issued at any time within two years from the date of such election."

The statute attempted to be amended is as is set out in the footnote.[1]

1. I.C. § 33–909. *"Bonds—Limitations on amount—Elections to authorize issuance—Definition of outstanding indebtness.—*

The board of trustees of any school district in the state of Idaho, upon approval of a majority thereof, may submit to the qualified electors who

■ The object or purpose of Idaho Constitution Art. 3 § 16 is, to prevent "the combining of incongruous matters and objects totally distinct and having no connection nor relation with each other; to guard against 'logrolling' legislation; and to prevent the perpetration of fraud upon the members of the Legislature or the citizens of the state in the enactment of laws." In re Crane, 27 Idaho 671, 151 P. 1006, 1011, L.R.A.1918A, 942; See also, State v. Pioneer Nurseries Co., 26 Idaho 332, 143 P. 405; State v. Doherty, 3 Idaho 384, 29 P. 855; Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038; Vol. 1 Proceedings of the Idaho Constitutional Convention p. 531 et seq. Under the provisions of Idaho Const. Art. 3 § 16, if the title of an original act includes a general statement of the sub-

are resident taxpayers of the district the question as to whether or not the board shall be empowered to issue negotiable coupon bonds of the district in an amount and for a period of time to be named in the notice of election. The amount in common, joint common, independent * and joint independent school districts shall not exceed at any time, including outstanding indebtedness in aggegate, six per cent of the assessed valuation of the taxable property of said district as shown by the assessment on the tax rolls for the year next preceding. During the period between March 31, * 1959, and March 31, * 1961, the amount shall not exceed at any time ten per cent thereof in class C and joint class C school districts organized under the provisions of chapter 5, title 33, Idaho Code as amended, provided that any proposal for the issuance of bonds in class C and joint class C districts which exceeds six per cent of assessed valuation * less outstanding indebtedness in aggregate shall have prior express approval of the state board of education. Nor shall the same exceed at any time, including outstanding indebtedness, in the aggregate ten per cent thereof in independent class A, and joint independent class A school districts. During the period between March 31, * 1959, and March 31, * 1961, the amount shall not exceed at any time, including outstanding indebtedness in the aggregate, fifteen per cent thereof in class A, joint class A, class B and joint class B school districts organized under the provisions of chapter 5, title 33, Idaho Code as amended. * * *.

"Outstanding indebtedness within the meaning of this section shall be interpreted as the total sum of unredeemed outstanding bonds, less all moneys in the sinking or bond redemption fund accumulated for the redemption of such outstanding bonds and less the sum of all taxes levied for the redemption of such bonds which taxes remain uncollected.

"No person shall vote at any such bond election who is not:

"1. A qualified elector of the district; and,

"2. A bona fide resident thereof for more than thirty days last past; and,

"3. a. A taxpayer; or,

b. The wife or husband of a taxpayer.

"A taxpayer within the meaning of this section is a person who pays taxes on real property or who is obligated as owner or as a contract purchaser to pay taxes on real property within the boundaries of the district.

"Except as herein otherwise provided, such bond election shall be conducted as other school elections. If two-thirds of the votes cast at such election are in favor of the issuance of such bonds the same may be issued at any time within two years from the date of such election."

ject of the act, the title is sufficient and such general statement is sufficient to include all provisions of the act having a reasonable tendency to accomplish the purpose of the act. Turner v. Coffin, 9 Idaho 338, 74 P. 962; State v. Doherty, supra; State v. Pioneer Nurseries Co., supra; In re Crane, supra; Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, 78 P.2d 105.

█ The title of amendatory acts (as distinguished from original acts), is sufficient if it refers by number to the section to be amended, provided the title of the original act is sufficient under the rule dealing with the original measures, and provided the amendment is germane to the subject of the original act. State v. Jones, 9 Idaho 693, 75 P. 819; Settlers' Irr. Dist. v. Settlers' Canal Co., 14 Idaho 504, 94 P. 829; In re Edwards, 45 Idaho 676, 266 P. 665; First Security Bank of Idaho v. Fremont County, 55 Idaho 76, 37 P.2d 1101; State v. Taylor, 58 Idaho 656, 78 P.2d 125.

█ The rules as to original and amendatory acts are not wholly determinative here, for there is another problem presented by the title. In addition to the title stating that I.C. § 33–909 is being amended, it proceeds to particularize some, but not all, of the changes, i. e., "To remove time limitation",—"Specifying that the favorable vote required for the approval of the issuance of school district bonds shall be that which is now, or may hereafter, be established by the constitution of the State of Idaho", and "clarifying the language of the section". When such specifications are made the legislation is limited to the matters specified, and anything beyond them is void, however germane it may be to the subject of the original act. State ex rel. Morford v. Emerson, 1 Terry 233, 40 Del. 233, 8 A.2d 154; Hays v. Federal Chemical Co., 151 Tenn. 169, 268 S.W. 883; Niles v. Schoolcraft Circuit Judge, 102 Mich. 328, 60 N.W. 771; Davey v. Ruffell, 162 Pa. 443, 29 A. 894; Abernathy v. Mitchell, 113 Ga. 127, 38 S.E. 303; State v. Schultz Gas Fixture & Art Metal Co., 83 Md. 58, 34 A. 243; People ex rel. Corscadden v. Howe, 177 N.Y. 499, 69 N.E. 1114, 66 L.R.A. 664; See also 1 Lewis Sutherland Stat. Const., 2nd Ed. Sec. 140, pg. 238; 1 Cooley Const. Law 8th Ed. pg. 310.

█ In addition to removal of time limitations, the act purports to change classification of school districts for bonding purposes, to those "not qualified to operate high schools" and "to high school operating districts". By means of the reclassification and the fixing of debt limitations of the reclassified districts, it increases the debt limit of unreorganized districts and class C districts (without approval of the State Board of Education) from six to ten per cent. It purports to change the base for the computation of the maximum bonded indebtedness from the assessed val-

uation of the year preceding the date of the election, to "assessed valuation", without designation as to when such valuation should be determined. These changes, all substantive, and not merely adjective in nature, are not mentioned or indicated in the title, and the subject of the purported legislation is thus not expressed.

The contention of an amicus curiae that if chapter 89 is held unconstitutional, there is no limitation on the authority of reorganized districts to issue bonds, is without merit. The portion of the act held unconstitutional leaves I.C. § 33–909 intact. That section fixes the debt limit of the districts therein mentioned at six and ten percent of assessed valuation, the authorization of a greater amount having expired. The limitations mentioned in I.C. § 33–523 are found by application of I.C. § 33–530 and § 33–531.

Any district, which subsequent to March 31, 1961, has held an election empowering the trustees to issue bonds, is governed by the limitations of I.C. § 33–909. If any such election authorized the issuance of bonds in an amount in excess of that authorized by I.C. § 33–909, the trustees would still be empowered to issue the lesser amount permitted by such section, as the authorization for the greater amount necessarily includes authorization for the lesser.

By the election in the instant case, held prior to March 31, 1961 (the extended date under which class A and B and joint class A and B districts, could authorize trustees to bond up to 15% of assessed valuation), the board of trustees were empowered to issue the district bonds in the amount of $370,000.00, which at the time of the election exceeded the 10% debt limitation, but was within the 15% debt limitation. I.C. § 33–909 also provides inter alia, "If two-thirds of the votes cast at such election are in favor of the issuance of such bonds the same *may be issued at any time within two years from the date* of such election." (Emphasis added.) This provision empowered the trustees, in their discretion, to issue such bonds at any time within two years of the date of the election; the expiration date of March 31, 1961, is immaterial as to actual issuance of the bonds as the trustees were empowered to issue the bonds by an election held prior to such date.

Any other conclusion would nullify the express provisions of the statute. The statutory provision that the trustees shall be "empowered to issue negotiable coupon bonds," when read in conjunction with the provision for a two year period within which they can act, contemplates a discretionary function by the board as to whether they shall issue the bonds, and no debt is created until they have been issued. The statutory terms used here "to empower" is different from that employed by the legislature as mentioned in the case of

**322**

Lewis v. Brady, 17 Idaho 251, 104 P. 900, 28 L.R.A.,N.S., 149, wherein it was held that the debt itself was created by the legislative action in authorizing the bonds. Under the statute involved in the Lewis case, the terms "authorized, empowered and directed," were used while here the statute provides for election by the voters merely to empower the trustees to issue the bonds.

In summary, S.L.1961, Ch. 89, fails to comply with the provisions of Idaho Const. Art. 3, § 16 class C and joint class C districts are limited to six percent of their assessed valuation in issuance of bonds; class A, joint class A, class B and joint class B districts are limited to ten percent of their assessed valuation in issuance of bonds. The bond issue in the instant case, being authorized prior to March 31, 1961, by vote of electors in an amount more than ten percent, but less than fifteen percent, is valid.

In the instant action, the defendant's countersigning of the bonds is a ministerial duty, and his refusal is without legal justification.

The defendant is hereby ordered and directed to countersign all bonds duly authorized by the plaintiffs, as Board of Trustees. It is further ordered that writ of mandate be made permanent.

TAYLOR, C. J., and SMITH, KNUDSON and McQUADE, JJ., concur.